**Philippe TANGUY, Appellant,**

v.

**David LAUX, Appellee.**

No. 01–07–00765–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 3, 2008.

Rehearing Overruled June 24, 2008.

Joe A. Izen, Jr., Bellaire, for appellant.

Alice Oliver–Parrott, Justin David Burrow, Burrow & Parrott, L.L.P., Houston, for appellee.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

ELSA ALCALA, Justice.

In this interlocutory appeal, appellant, Philippe Tanguy, appeals from the trial court's order granting a temporary injunction on behalf of appellee, David Laux. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon Supp.2007). Laux filed suit against Tanguy asserting that a judgment debtor of Laux's, Richard Davis, had violated the Texas Uniform Fraudulent Transfer Act[1] by transferring a 1986 Twin Otter aircraft to Tanguy. The trial court issued a temporary injunction prohibiting Tanguy from "selling, encumbering, transferring and/or relocating from the county" the aircraft. In four issues, Tanguy asserts that (1) the temporary injunction order is void on its face; (2) Laux had no present right of recovery because he did not have a lien on his judgment debtor's personal property; (3) Laux was not entitled to injunctive relief because he did not record his alleged judgment lien in the records of the Federal Aviation Administration ("FAA") registry for aircraft; and (4) Laux had no greater right in the aircraft than his alleged judgment debtor. We conclude that the temporary injunction is not void and that the trial court did not abuse its discretion in issuing a temporary injunction. We therefore affirm.

## Background

In 2004, Laux filed suit against Richard Davis in district court in Harris County, seeking damages for breach of contract in connection with a partnership dispute. After a jury trial, the trial court, on or about August 11, 2006, rendered a final judgment in favor of Laux and against Davis for $384,126.94. Since that time, Laux has been attempting to collect on his judgment.

The instant suit was filed against Tanguy, alleging that the transfer of the Twin Otter aircraft from Davis to Tanguy violated the Texas Uniform Fraudulent Transfer Act. After a temporary restraining order was initially issued in favor of Laux, the trial court held a hearing and issued the temporary injunction against Tanguy on August 16, 2007 ("the August Order"). The August Order did not set the underlying case for trial.

Tanguy timely filed a notice of appeal on September 4, 2007. Tanguy filed his initial brief in this Court on November 20, 2007, asserting four issues, including a challenge that asserted that the August Order was void since it did not set the underlying case for trial.

While the appeal of the August Order was pending in this Court, Laux filed with the trial court, on December 4, 2007, a Motion for Temporary Injunction Nunc Pro Tunc to add a trial setting to the temporary injunction. In his Motion for Temporary Injunction Nunc Pro Tunc, Laux specifically prayed that the trial court "vacate the judgment previously signed, and enter judgment in accordance with the proposed form [the December Order] which is attached to this motion." The trial court granted Laux's motion and ordered that "the clerk will enter judgment in accordance with the judgment as

---

1. *See* TEX. BUS. & COM.CODE ANN. §§ 24.001–.013 (Vernon 2002 & Supp.2007).

rendered and signed at this time." The trial court then signed a temporary injunction on December 6, 2007 ("the December Order"). The December Order contains the same language as the August Order, except that it has an additional sentence not in the August Order that states, "It is further ORDERED, ADJUDGED, and DECREED this matter is scheduled to begin trial on May 26, 2008."

After the trial court signed the December Order, Laux filed his appellee's brief with our Court on December 10, 2007. In the brief, in response to the assertion that the August Order was void because it failed to set the underlying case for trial, Laux relies on the trial court's grant of the nunc pro tunc order to contend that the failure to set the case for trial was a clerical error that was remedied by the December Order.

### Failure to Set Case for Trial on the Merits

■ In his first issue, Tanguy contends that the temporary injunction is void because it fails to comply with the Texas Rules of Civil Procedure that require that the case be set for a trial on the merits.[2] In his brief, Laux asserts that (1) the failure of the August Order to include the statement that the underlying case was set for trial was a clerical error that could be remedied by a nunc pro tunc order and (2) the December Order that was rendered pursuant to the nunc pro tunc order set the case for trial and therefore complied with the requirements for temporary injunctions. In his reply brief, Tanguy asserts that the trial court's failure to include a trial setting is a judicial error, not a clerical one, and that a nunc pro tunc order may not be used to correct a judicial error.[3]

Although the parties refer to the December Order as a nunc pro tunc order, it is a temporary injunction that is identical to the August Order, except that it adds a trial setting for the case. In his Motion for Temporary Injunction Nunc Pro Tunc, Laux specifically prayed that the trial court "vacate the judgment previously

2. In pertinent part, rule 683 of the Texas Rules of Civil Procedure provides, "Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought." TEX.R. CIV. P. 683. "The requirements of Rule 683 are mandatory and must be strictly followed." *InterFirst Bank San Felipe v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex.1986); *see also Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 337 (Tex.2000) (citing *InterFirst*, 715 S.W.2d at 641). A temporary injunction is void and should be dissolved when it does not include an order setting the matter for trial. *InterFirst Bank*, 715 S.W.2d at 640–41; *see also Tex. Tech Univ. v. Finley*, 223 S.W.3d 510, 515 (Tex. App.-Amarillo 2006, no pet.) (declaring temporary injunction void and dissolving it for failure to include setting for trial on merits); *City of Sherman v. Eiras*, 157 S.W.3d 931, 931 (Tex.App.-Dallas 2005, no pet.) (same); *Kaufmann v. Morales*, 93 S.W.3d 650, 656–57 (Tex. App.-Houston [14th Dist.] 2002, no pet.) (same).

3. A judgment nunc pro tunc may be used to correct a clerical error in the trial court's judgment after the court's plenary power has expired, but cannot be used to correct a judicial error. *LaGoye v. Victoria Wood Condo. Ass'n*, 112 S.W.3d 777, 783–84 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (citing *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986) and *In re Fuselier*, 56 S.W.3d 265, 268 (Tex.App.-Houston [1st Dist.] 2001, orig. proceeding)); *see also* TEX.R. CIV. P. 316, 329b(f). Having determined that the trial court did not lose jurisdiction to change the original temporary injunction, we conclude it was a misnomer for Laux to file a motion that called the request for the new injunction a request for a nunc pro tunc. *See* TEX.R.APP. P. 29.5. The trial court did not change the August Order by use of the nunc pro tunc procedure, but rather issued a new injunction in the December Order that replaced the dissolved August Order.

signed, and enter judgment in accordance with the proposed form [the December Order] which is attached to this motion." The trial court granted Laux's motion and ordered that "the clerk will enter judgment in accordance with the judgment as rendered and signed at this time."

"While an appeal from an interlocutory order is pending, the trial court retains jurisdiction of the case and may make further orders, including one dissolving the order appealed from...." TEX.R.APP. P. 29.5. "But the [trial] court must not make an order that ... interferes with or impairs the jurisdiction of the appellate court or effectiveness of any relief sought or that may be granted on appeal." TEX.R.APP. P. 29.5(b). "While an appeal from an interlocutory order is pending, ... the appellate court may review ... a further appealable interlocutory order concerning the same subject matter." TEX.R.APP. P. 29.6(a)(1); see Ahmed v. Shimi Ventures, L.P., 99 S.W.3d 682, 688–89 (Tex.App.-Houston [1st Dist.] 2003, no pet.).

We have jurisdiction to address the December Order because it is a further appealable interlocutory order that concerns the same subject matter. See TEX.R.APP. P. 29.5; Ahmed, 99 S.W.3d at 689. Further, the trial court had jurisdiction to dissolve the August Order and to replace it with the December Order that concerned exactly the same subject matter but with the addition of the trial date, if those actions did not interfere with or impair our jurisdiction or the effectiveness of the relief sought in the appeal. See TEX.R.APP. P. 29.5; see Ahmed, 99 S.W.3d at 688–89. We conclude that the trial court's actions in dissolving the August Order and replacing it with the December Order do not interfere with or impair our jurisdiction or the effectiveness of the relief sought in the appeal because Tanguy's appellate challenges concerning the substance of the injunction remain alive, despite the trial court's orders, because the two injunctions are substantively the same. See TEX. R.APP. P. 29.5. For example, if we agreed with Tanguy's challenges to the merits of the injunction, we could reverse the injunction and give him the relief he seeks in the appeal. See id. Therefore, the trial court's actions in dissolving the August Order and issuing the December Order on the same subject do not diminish the effectiveness of the substantive challenges asserted by Tanguy in the appeal, which we address in issues two through four. See id.

Although the substantive challenges by Tanguy are not affected by the trial court's orders, Tanguy also made a procedural challenge to the injunction. Tanguy's procedural challenge asserts that the August Order was void on its face because it failed to set the case for trial. Tanguy wanted the August Order dissolved due to its lack of the trial setting, and the trial court agreed with him by dissolving the order and issuing a new injunction in the December Order that included a trial date. We conclude that the dissolution of the August Order does not interfere with or impair the *effectiveness* of the relief sought because the trial court gave Tanguy all the relief he sought from us. See TEX.R.APP. P. 29.5(b). When we addressed an almost identical situation, we said,

> A trial court should not be allowed to frustrate a party's right to appellate review. However, that has not happened in this case. The amended order merely sets a trial date for a hearing on the permanent injunction, as required.... The appellant should not be able to complain both that the order is void because no trial date is set and also that a trial date has been set. The reason for requiring that a temporary injunction set a date for trial on the merits is to prevent the temporary injunction from becoming effectively permanent, without a trial having occurred. That purpose was ac-

complished here by the setting of the trial date. The trial court's amended order accomplishes the purpose of rule 683 by preventing the temporary injunction from becoming "permanent" while the appellant waits indefinitely for a trial on the merits. Moreover, it does not interfere with our power to grant relief on appeal. It is unnecessary to vacate this injunction in order to protect either appellant's right to a speedy trial or to effective appellate review of the temporary injunction.

*Eastern Energy, Inc. v. SBY P'ship*, 750 S.W.2d 5, 6 (Tex.App.-Houston [1st Dist.] 1988, no writ).[4]

We conclude the trial court had jurisdiction to dissolve the August Order and to issue the December Order that set the case for trial. *See* TEX.R.APP. P. 29.5; *Ahmed*, 99 S.W.3d at 689. We hold that the December Order granting the injunction was not void. We overrule Tanguy's first issue.

### Merits of the Temporary Injunction

Tanguy's three remaining issues contend that Laux has not met his burden to establish the temporary injunction.

### A. Standard of Review for the Temporary Injunction

■■■ The decision to grant or deny a temporary injunction lies in the sound discretion of the trial court, and the court's ruling is subject to reversal only for a clear abuse of discretion. *TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 36 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993)). We must not substitute our judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id.* (citing *Johnson v. Fourth Ct.App.*, 700 S.W.2d 916, 918 (Tex.1985)). In reviewing an order granting or denying a temporary injunction, we draw all legitimate inferences from the evidence in a manner most favorable to the trial court's judgment. *Id.* (citing *CRC–Evans Pipeline Int'l v. Myers*, 927 S.W.2d 259, 262 (Tex.App.-Houston [1st Dist.] 1996, no writ)). Abuse of discretion does not exist if the trial court heard conflicting evidence and evidence appears in the record that reasonably supports the trial court's decision. *Id.* (citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *Myers*, 927 S.W.2d at 262).

### B. Elements of Temporary Injunction

■■■ A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *TMC Worldwide*, 178 S.W.3d at 36 (citing *Walling*, 863 S.W.2d at 57). A temporary injunction is an ex-

---

4. In *Reeves v. City of Dallas*, the Dallas court held that the remainder of the second temporary injunction order—which apparently added a trial date that the first order did not have—interfered with its appellate jurisdiction and the relief that it could grant and so violated rule 29.5(b). 68 S.W.3d 58, 60 (Tex. App.-Dallas 2001, pet. denied). We agreed with that premise in footnote 13 in *Ahmed*. *Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 691 n. 13 (Tex.App.-Houston [1st Dist.] 2003, no pet.). The appellate issues in *Reeves* were that "(1) the judge who signed the March injunction is not the judge who heard the evidence in February, and (2) the March in-

junction does not sufficiently state the facts on which it is based as required...." *Reeves*, 68 S.W.3d at 60. The *Reeves* court determined that the March injunction issued to replace the February injunction interfered with the appellate jurisdiction and the effectiveness of any relief sought in the appeal of the February order. *Id.* We distinguish *Reeves* on the basis that the court determined that under the facts of that case the trial court's later order interfered with the appellate court's jurisdiction and relief for the earlier order. *See id.* Unlike *Reeves*, the close analysis of the appellate issues presented show none of those concerns. *See id.*

traordinary remedy and does not issue as a matter of right. *Id.* To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002)). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Id.*

Tanguy does not address any of the elements of a temporary injunction in his brief. In his second, third, and fourth issues, Tanguy contends that (1) Laux had no present right of recovery because he did not have a lien on his judgment debtor's personal property; (2) Laux was not entitled to injunctive relief because he did not record his alleged judgment lien in the records of the FAA registry for aircraft; and (3) Laux had no greater right in the aircraft than his alleged judgment debtor. We construe these as an attack on the second element necessary for a temporary injunction—"a probable right to the relief sought." [5]

## C. The Second Element: A Probable Right to the Relief Sought

■ A probable right to the relief sought is shown by alleging a cause of action and presenting evidence that tends to sustain it. *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Laux filed suit against Tanguy asserting a cause of action under the Texas Uniform Fraudulent Transfer Act. The Texas Uniform Fraudulent Transfer Act provides,

A transfer made ... by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made ..., if the debtor made the transfer ...:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer ..., and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. & COM.CODE ANN. § 24.005(a) (Vernon 2002). The allegations of Laux's petition track these statutory provisions. In addition, the Texas Uniform Fraudulent Transfer Act provides that as a remedy a creditor may seek "avoidance of the transfer ... to the extent necessary to satisfy the creditor's claim." *Id.* § 24.008(a)(1). The statute also specifically provides that "subject to applicable principles of equity and in accordance with applicable rules of civil procedure," a creditor may obtain "an injunction against further disposition by

---

**5.** Tanguy does not challenge the first or third elements. Concerning the first element, Tanguy does not contend that a cause of action seeking, among other things, injunctive relief was not brought against him. Although Tanguy does not challenge the third element, we note that proof of an inadequate remedy at law may be shown by evidence that the debtor is insolvent, and here it is undisputed that Davis was in bankruptcy at the time the temporary injunction issued. *See Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 611 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

the debtor or a transferee, or both, of the asset transferred." *Id.* § 24.008(a)(3)(A).

 Under the Texas Uniform Fraudulent Transfer Act, a temporary injunction may be sustained if the trial court was presented with evidence of intent to defraud the creditor. *Tel. Equip. Network,* 80 S.W.3d at 609. The Texas Uniform Fraudulent Transfer Act lists several non-exclusive factors to consider in determining intent:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

TEX. BUS. & COM.CODE ANN. § 24.005(b)(1)-(11).

None of Tanguy's contentions undermine Laux's showing of a probable right to recover under the Texas Uniform Fraudulent Transfer Act.

### 1. Lack of Proof of Lien

 Tanguy's challenges in his second and third issues do not pertain to the proof required to establish a violation of Texas Uniform Fraudulent Transfer Act.

In his second issue, Tanguy contends,

Appellee Laux had no present right to injunctive relief since the mere recovery of a judgment or filing of an abstract of judgment does not create a lien on a judgment debtor's personal property.

Under this issue, Tanguy contends that Laux has not established any type of lien against the personal property of Davis, the judgment debtor. However, Tanguy does not assert that the existence of a lien is a prerequisite to injunctive relief and he does not cite any authority that stands for the proposition that failing to establish a lien against Davis precludes Laux from obtaining injunctive relief.

Similarly, in his third issue, Tanguy asserts,

Laux's failure to prove recordation of his alleged judgment lien in the records of the F.A.A. registry for aircraft was fatal to his right to recover injunctive relief.

Under this issue, Tanguy contends, "A judgment creditor who wants to impose a judgment lien on an aircraft must timely record his writ of execution or attachment in the FAA registry **BEFORE** the judgment Debtor sells the aircraft." Assuming that Tanguy's legal contention concerning the imposition of a lien on an aircraft is correct, he makes no argument and cites to no authority that the existence of a lien is necessary before a temporary injunction may be issued or that the existence of a lien has any relation to Laux's cause of action asserted under the Texas Uniform Fraudulent Transfer Act.

We conclude that the lack of proof of the existence of a lien does not undermine Tanguy's showing of a probable right to recovery under the Texas Uniform Fraudulent Transfer Act, which allows a creditor to obtain "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred." *Id.* § 24.008(a)(3)(A). The express language of Texas Uniform Fraudulent Transfer Act, which Laux followed in his petition seeking relief against Tanguy, provides that a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor." *Id.* § 24.005(1). The statute does not require that a creditor have a lien against the debtor's property in order to pursue relief under the Texas Uniform Fraudulent Transfer Act. Because the existence of a lien is not a prerequisite to Laux's cause of action under the Texas Uniform Fraudulent Transfer Act, Tanguy's assertions in his second and third issues do not tend to establish that Laux did not have a probable right to the relief sought.

We overrule Tanguy's second and third issues.

### 2. Greater Right of Ownership

■■■ In his fourth issue, Tanguy asserts,

Laux, as a judgment creditor, had no greater right in the aircraft than his alleged judgment debtor Davis even if Davis (not an L.L.C.) sold the aircraft to appellant Tanguy.

Tanguy contends that the FAA records reflect that 13,500 Air Express, L.L.C. was the owner of the disputed aircraft, not Davis. Tanguy asserts that, even if Davis was the owner, when Davis sold the aircraft to Tanguy, there was "no restriction by judicial lien or otherwise preventing him from transferring the aircraft to Tanguy." The factual basis of this contention is that the documents that memorialize the sale of the aircraft are dated January 5, 2006, approximately seven months before the date that Laux obtained a judgment against Davis.

Although Tanguy presented evidence that indicated that the sale of the aircraft occurred on January 5, 2006, which was before Laux obtained a judgment against Davis, the standard of review dictates that we must view the evidence in favor of the trial court's judgment. *See TMC Worldwide,* 178 S.W.3d at 36. The bill of sale for the aircraft was not dated until May 3, 2007, approximately 9 months *after* the judgment against Davis and only six weeks before Davis filed for bankruptcy. Additionally, Laux filed suit against Davis in April 2004. Viewing the evidence in a light most favorable to the trial court's order, the court could have inferred that (1) Davis or Tanguy attempted to conceal the transfer by waiting 16 months before filing the bill of sale with the FAA, *see* Tex. Bus. & Com.Code Ann. § 24.005(b)(3); (2) Davis became insolvent shortly after the transfer, *see id.* § 24.005(b)(9); and (3) Davis had been sued before the transfer occurred, *see id.* § 24.005(b)(4). *See also Tel. Equip. Network,* 80 S.W.3d at 609 (finding that trial court did not abuse discretion by issuing temporary injunction under Texas Uniform Fraudulent Transfer Act when evidence tended to support finding of factors listed in section 24.005(b), including that transfer had been concealed and that debtor had been sued before the transfer). Although Tanguy asserts that there is evidence that weighs against the trial court's decision to issue a temporary injunction, we cannot conclude that the trial court abused its discretion when the record contains conflicting evidence. *See TMC Worldwide,* 178 S.W.3d at 36.

We overrule Tanguy's fourth issue.

## Conclusion

We affirm the trial court's order granting a temporary injunction. All pending motions are dismissed as moot.