Opinion filed April 30, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed April 30,
2009

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-08-00259-CV

                                                    __________

 

       
BRAD VAUGHN AND EAST COAST DIRECTIONAL DRILLING, INC., Appellants

 

                                                             V.

 

      INTREPID DIRECTIONAL
DRILLING SPECIALISTS, LTD., Appellee

 



 

                                        On
Appeal from the 142nd District Court

 

                                                        Midland
County, Texas

 

                                                Trial
Court Cause No. CV-46633

 



 

                                                                   O
P I N I O N

Intrepid
Directional Drilling Specialists, Ltd. obtained a temporary injunction
enforcing covenants not to compete against its former employee Brad Vaughn and
East Coast Directional Drilling, Inc.  In this interlocutory appeal, Vaughn and
East Coast appeal from the trial court=s
order granting the temporary injunction.  See Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(4) (Vernon
2008).  We affirm.

 








                                                              Factual
Background

Intrepid
performs directional drilling services.  Vaughn worked as a salesman for
Intrepid for nine months before leaving in 2004 or 2005.  After leaving
Intrepid, Vaughn formed another directional drilling company, Vaughn Guidance
Systems, LLC (VGS).  In March 2007, Intrepid purchased VGS from Vaughn and his
mother, Carolyn, for $7,000,000.  Vaughn received $3.43 million of the sales
proceeds, and he became an employee of Intrepid.  Vaughn and Intrepid signed a
three-year employment agreement.  The agreement provided that Vaughn would be
paid a signing bonus of $15,000, a base annual salary of $150,000, and a bonus
in accordance with Intrepid=s
directional drilling specialists sales commission plan.  Vaughn signed an agreement
not to compete, dated March 30, 2007.  The agreement included the following
provisions:

2. Covenant
Against Competition. [Vaughn] agrees that during the period commencing
on [March 30, 2007] and ending on March 31, 2011 (the ANon-Compete Period@), [he] shall not (except on behalf of [VGS]
and/or Intrepid) engage, directly or indirectly, within the geographic area set
out on Schedule A, attached hereto and made a part hereof (the ARestricted Territory@), in any manner including
by way of example, but without limitation, as a sole proprietor, partner,
officer, director, Member, member, investor, lender, lessor, advisor,
consultant, independent contractor or employee in directional drilling and/or
measurement while drilling; provided, however, that the foregoing shall not
preclude [Vaughn] from owning not more than one percent (1%) of the outstanding
voting securities of any company having publicly-traded equity securities.

 

3. Covenants
Against Solicitation of Customers, Employees and Suppliers.

(a)
[Vaughn] agrees that during the Non-Compete Period, [he] shall not (except on
behalf of [VGS] and/or Intrepid), solicit, directly or indirectly, any former
customers of [VGS] or any current or prospective customers of [VGS] and/or
Intrepid for the purpose of selling within the Restricted Territory directional
drilling and/or measurement while drilling services, or otherwise interfere,
directly or indirectly, in any manner with any relationship between [VGS]
and/or Intrepid and such customers within the Restricted Territory.

 

(b)
[Vaughn] agrees that during the Non-Compete Period, [he] shall not solicit,
recruit or employ, directly or indirectly, within the Restricted Territory any
of [VGS=s] and/or
Intrepid=s employees,
or otherwise interfere, directly or indirectly, in any manner with their
employment by [VGS] and/or Intrepid.








 

(c)
[Vaughn] agrees that during the Non-Compete Period [he] shall not take any
action which would, or has the potential to, impair the goodwill of the
business of [VGS] and/or Intrepid, including, without limitation, actions which
would interfere with or damage [VGS=s]
and/or Intrepid=s
business relationships with its employees, suppliers, creditors, customers and
others with which it does business.  

 

Schedule A of the agreement contained a AGeographic
Scope of Limitation@
that included the following states:  Texas; New Mexico; Oklahoma; Louisiana;
and Colorado.

                                   Trial Court Proceedings

On
August 27, 2008, Intrepid filed this cause against Vaughn, East Coast, and
Joshua E. Mitchell.  Like Vaughn, Mitchell is a former employee of Intrepid.[1] 
Mitchell had an employment agreement with Intrepid that contained covenants not
to compete.  In its petition, Intrepid alleged that Vaughn and Mitchell had
conspired with each other Ato
violate their Employment Agreements with Intrepid and their fiduciary and other
contractual duties owed to Intrepid by leaving the employ of Intrepid and
taking one or more Intrepid clients, business opportunities and employees with
them to a new entity, East Coast.@ 
Intrepid also alleged that Vaughn=s
wife had created East Coast Aas
an entity to which Vaughn and Mitchell would divert Intrepid business,
employees, and customers, to Intrepid=s
detriment.@  Intrepid
alleged that Vaughn and Mitchell had breached their covenants not to compete,
and Intrepid sought temporary and permanent injunctive relief to enforce the
covenants against them.  Intrepid also alleged breach of fiduciary duty,
misappropriation of trade secrets, and conspiracy claims against Vaughn and
Mitchell.  The trial court granted Intrepid a temporary restraining order
enforcing the covenants not to compete against Vaughn and Mitchell.

The
trial court conducted a two-day hearing on Intrepid=s request for temporary injunctive relief. 
Following the hearing, the trial court entered an order granting Intrepid a
temporary injunction against Vaughn and denying Intrepid injunctive relief
against Mitchell.  In the order, the trial court found that Intrepid had
established a probable right of recovery against Vaughn and East Coast and that
Intrepid had no adequate remedy at law.  The trial court granted the temporary
injunction Ato
preserve the status quo between the parties pending final resolution of this
suit, or until March 31, 2011, whichever date first occurs.@








The
trial court made detailed findings in support of its conclusion that Intrepid
had established a probable right of recovery.  The trial court stated the
following findings, among others, in its order:

(1)
Pursuant to and in conjunction with the Purchase Agreement, INTREPID and VAUGHN
also entered into an Agreement Not To Compete (AVaughn
Non-Compete Agreement@),
attached to this order. . . . VAUGHN was contractually employed by INTREPID
from approximately March 20, 2007 until his employment with INTREPID was
terminated by INTREPID on August 28, 2008;

 

(2)
On April 22, 2008, VAUGHN=s
wife Dana Sue Vaughn organized EAST COAST as a for-profit corporation under the
laws of the State of Texas.  Although organized by Dana Sue Vaughn, EAST COAST
is under the direction and control of VAUGHN.  VAUGHN has operated and intends
to operate EAST COAST as a directional drilling and measurement while drilling
company;

 

(3)
The Vaughn Non-Compete Agreement restricts VAUGHN from conducting certain
competitive activities in a five-state restricted territory consisting of
Texas, New Mexico, Oklahoma, Louisiana and Colorado (the ARestricted Territory@).  VAUGHN is bound by the
terms of the Vaughn Non-Compete Agreement and it is enforceable by INTREPID
against VAUGHN;

 

(4)
The Vaughn Non-Compete Agreement protects INTREPID against VAUGHN engaging in
competing work within the Restricted Territory and also protects INTREPID=s customer base within the
Restricted Territory against certain competitive activities by VAUGHN, as
specified in the Vaughn Non-Compete Agreement, regardless of the location of
the actual work to be performed on behalf of the INTREPID customer;

 

(5)
Chesapeake Energy Corporation (ACHESAPEAKE@) is a valuable business
customer of INTREPID which is headquartered in Oklahoma but is engaged in
business both within and beyond the Restricted Territory;

 

(6)
Imminent and irreparable harm will be sustained by INTREPID as a result of
VAUGHN=s breach and
threatened breach of Sections 2, 3(a) and 3(c) of [the] Vaughn Non-Compete
Agreement.  The Court finds that INTREPID has established its probable right to
recover for breach and threatened breach of the Vaughn Non-Compete Agreement by
introduction of evidence tending to establish that VAUGHN caused EAST COAST to
attempt to compete against INTREPID by conducting directional drilling
activities and/or measurement while drilling activities for INTREPID customer
CHESAPEAKE in Pennsylvania;

 








(7)
VAUGHN breached and threatened breach of Section 3(b) of the Vaughn Non-Compete
Agreement when VAUGHN solicited and recruited Defendant MITCHELL to work for
VAUGHN and EAST COAST;

 

(8)
VAUGHN has used and, absent injunction, intends to continue to use EAST COAST
to compete with INTREPID in the Restricted Territory; 

 

(9)
VAUGHN has competed and, absent injunction, intends to continue to compete with
INTREPID in the Restricted Territory;

 

(10)
The Court finds that no reformation of the Vaughn Non-Compete Agreement is
necessary under [Tex. Bus. & Com.
Code Ann. '
15.50 (Vernon 2002)].

 

The trial court also found that, absent a temporary injunction, Intrepid
would suffer irreparable injury in two respects:

(1) Loss of
employees to VAUGHN and/or EAST COAST; and

 

(2) Loss of
customers to VAUGHN and/or EAST COAST from within the Restricted Territory.

 

The trial court
stated that, A[u]nder
the circumstances described herein, including the potential ongoing loss of
employees and customers, INTREPID=s
damages are impossible to measure by any definite, certain, or useable
pecuniary standard.@ 
Therefore, the trial court concluded that Intrepid=s harm was imminent, irreparable, and lacked
an adequate legal remedy.

The trial court awarded injunctive relief in Section III
of the order.  In Section III, the trial court required Vaughn and East Coast
to immediately:

(a)
Cease, desist and refrain from any direct or indirect participation in a
directional drilling or measurement while drilling entity within the Restricted
Territory.  The 1% or less ownership exclusion under Paragraph 2 of the Vaughn
Non-Compete Agreement is excepted;

 

(b)
Cease, desist and refrain from any solicitation of any INTREPID customer within
the Restricted Territory for selling directional drilling or measurement while
drilling within the Restricted Territory (paragraph 3(a) of the Vaughn
Non-Compete Agreement);

 








(c)
Cease, desist and refrain from any other interference with any INTREPID
customer within the Restricted Territory for directional drilling or
measurement while drilling outside the Restricted Territory (paragraph 3(a) of
the Vaughn Non-Compete Agreement);

 

(d)
Cease, desist and refrain from any solicitation or offers of employment to any
of INTREPID=s
employees within the Restricted Territory (paragraph 3(b) of the Vaughn
Non-Compete Agreement);

 

(e)
Cease, desist and refrain from any conduct calculated to interfere with, impair
or disparage INTREPID=s
business relationships with INTREPID=s
customers, creditors, and suppliers located within the Restricted Territory
(paragraph 3(c) of the Vaughn Non-Compete Agreement).

 

                                                     Issues on Appeal

Vaughn and East Coast present two issues for review.  In
their first issue, they contend that the trial court abused its discretion in
granting the temporary injunction.  In their second issue, they assert that the
temporary injunction was fatally defective in form and content and, therefore,
failed to comply with the requirements of Tex.
R. Civ. P. 683.

                                                  Standard of Review

A temporary injunction=s
purpose is to preserve the status quo of the litigation=s subject matter pending a trial on the
merits.  Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002); Walling
v. Metcalfe, 863 S.W.2d 56, 57 (Tex. 1993).  A temporary injunction is an
extraordinary remedy and does not issue as a matter of right.  Butnaru,
84 S.W.3d at 204.  To obtain a temporary injunction, the applicant must plead
and prove three specific elements:  (1) a cause of action against the
defendant; (2) a probable right to the relief sought; and (3) a probable,
imminent, and irreparable injury in the interim.  Id.  A probable right
to the relief sought is shown by alleging a cause of action and presenting
evidence that tends to sustain it.  Tanguy v. Laux, 259 S.W.3d 851, 857
(Tex. App.C  Houston
[1st Dist.] 2008, no pet.).  An injury is irreparable if the injured party
cannot be adequately compensated in damages or if the damages cannot be
measured by any certain pecuniary standard.  Butnaru, 84 S.W.3d at 204.








We
review a trial court=s
order granting or denying a temporary injunction under an abuse of discretion
standard.  Butnaru, 84 S.W.3d at 204; Walling, 863 S.W.2d at 58. 
The reviewing court must not substitute its judgment for the trial court=s judgment unless the trial
court=s action was so
arbitrary that it exceeded the bounds of reasonable discretion.  Butnaru,
84 S.W.3d at 204.  In reviewing an order granting or denying a temporary
injunction, we draw all legitimate inferences from the evidence in a manner
most favorable to the trial court=s
judgment. Dallas Anesthesiology Assocs., P.A. v. Tex. Anesthesia Group, P.A.,
190 S.W.3d 891, 896 (Tex. App.CDallas
2006, no pet.); TMC Worldwide, L.P. v. Gray, 178 S.W.3d 29, 36 (Tex. App.CHouston [1st Dist.] 2005, no pet.).  A trial court does not abuse its
discretion when it bases its decision on conflicting evidence, as long as some
evidence in the record reasonably supports the trial court=s decision.  Butnaru, 84 S.W.3d at 211; Brammer v. KB Home
Lone Star, L.P., 114 S.W.3d 101, 105 (Tex. App.CAustin 2003, no pet.).

                                                                       Analysis

Vaughn
and East Coast contend in their first issue that the trial court abused its
discretion in granting the temporary injunction.  The evidence at the temporary
injunction hearing showed that Chesapeake was a valuable customer to Intrepid. 
Clint Leazer, the President of Intrepid, testified that Intrepid did about $45
million of business with Chesapeake on a yearly basis and that it would be a
substantial loss to Intrepid to lose Chesapeake as a customer.  Vaughn
acknowledged during his testimony that Chesapeake was a Atarget or a key account@ for Intrepid.  The evidence also showed that
Chesapeake is headquartered in Oklahoma, which is within the five-state
restricted territory in Vaughn=s
agreement not to compete.

            Vaughn
set up East Coast in April 2008.  Vaughn testified that East Coast was formed
for the purpose of performing directional drilling jobs in the East Coast area
of the United States.  Vaughn also testified that, in late August 2008, he
scheduled a job for East Coast to provide directional drilling services to
Chesapeake in Pennsylvania.  Intrepid obtained a temporary restraining order
from the trial court before East Coast performed the Chesapeake job, and East
Coast elected not to perform the job.

Intrepid
presented evidence that Vaughn had solicited its employees to work for East
Coast.  Nathan L. Moore, a Vice President of Operations for Intrepid, testified
that Vaughn had approached him on two occasions about leaving Intrepid and
going into a directional drilling business with him.  Moore also testified that
Vaughn offered him and Mitchell 15% interests in the business.








The
record supports the trial court=s
granting of a temporary injunction.  On behalf of East Coast, Vaughn agreed to
perform a job for Chesapeake in Pennsylvania.  Intrepid presented evidence
tending to show that Vaughn breached or threatened breach of Paragraphs 3(a),
(b), and (c) of his agreement not to compete.  The evidence tends to show (1)
that Vaughn interfered with an Intrepid customer, Chesapeake; (2) that Vaughn
engaged in conduct that was calculated to interfere with, impair, or disparage
Intrepid=s business
relationship with Chesapeake; and (3) that Vaughn solicited and recruited
Intrepid employees to work for East Coast.  Therefore, the evidence supports
the trial court=s
finding that Intrepid established a probable right to the relief sought on its
claims that Vaughn had breached his agreement not to compete.  The evidence
also supports the trial court=s
findings that, in the absence of an injunction, Intrepid would suffer
irreparable injury and that Intrepid=s
damages could not be measured by any certain pecuniary standard.  Intrepid
established the three elements necessary to obtain a temporary injunction.

Vaughn
and East Coast contend that Sections III(b), (c), and (e) of the temporary
injunction are unenforceable because they do not comply with the requirements
of Section 15.50(a) of the Business and Commerce Code.  Sections (III)(b) and
(c) are based on Paragraph 3(a) of Vaughn=s
agreement not to compete; Section III(e) is based on Paragraph 3(c) of Vaughn=s agreement not to
compete.  Vaughn and East Coast also assert that the trial court erred in
finding that no reformation of Vaughn=s
agreement not to compete was necessary.








The
legal issues before a trial court at a temporary injunction hearing are whether
the applicant showed a probability of success and irreparable injury; the
underlying merits of the controversy are not presented.  Loye v. Travelhost,
Inc., 156 S.W.3d 615, 619 (Tex. App.CDallas
2004, no pet.); Tom James of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 882
(Tex. App.CDallas
2003, no pet.).  At a temporary injunction hearing, a trial court does not
address the ultimate issue of whether a covenant not to compete is enforceable
under Section 15.50 of the Business and Commerce Code.  Tom James, 109
S.W.3d at 885.  Rather, a determination of A[t]hat
issue awaits a final judgment on the merits, such as a final judgment entered
after a jury or bench trial or a hearing on a motion for summary judgment.@  Id.  Thus, by
granting a temporary injunction, a trial court does not declare that a covenant
not to compete is valid.  Likewise, an appeal from an order granting or denying
a temporary injunction based on a covenant not to compete does not present for
appellate review the ultimate issue of whether the covenant is enforceable
under Section 15.50 of the Business and Commerce Code.  Loye, 156 S.W.3d
at 619; Tom James, 109 S.W.3d at 882-83.  A determination of the issues
of whether the covenants in Vaughn=s
agreement not to compete are enforceable and whether they must be reformed must
await a final judgment on the merits.

Vaughn
and East Coast argue that Section III(c) of the temporary injunction is based
on the trial court=s
improper interpretation of Paragraph 3(a) of Vaughn=s agreement not to compete.  In  Paragraph
3(a), Vaughn agreed, among other things, not to Aotherwise
interfere, directly or indirectly, in any manner with any relationship between
[VGS] and/or Intrepid and such customers within the Restricted Territory.@  In Section III(c), the
trial court ordered Vaughn and East Coast to A[c]ease, desist and refrain
from any other interference with any INTREPID customer within the Restricted
Territory for directional drilling or measurement while drilling outside the
Restricted Territory.@ 
Vaughn and East Coast contend that the trial court improperly interpreted
Paragraph 3(a) to include drilling Aoutside
the Restricted Territory.@ 
However, the language in Paragraph 3(a) provides support for the trial court=s interpretation. 
Paragraph 3(a) prohibits interference with any relationship between Intrepid
and its customers within the restricted territory.  For Paragraph 3(a) to
apply, the customer must be located in the restricted territory.  However,
Paragraph 3(a) does not contain a requirement that the drilling occur within
the restricted territory.  Based on the language in Paragraph 3(a) and the
evidence at the temporary injunction hearing, we cannot say that the trial
court=s interpretation
of Paragraph 3(a) constituted an abuse of discretion.  See Simon
Prop. Group (Tex.) L.P. v. May Dep=t
Stores Co., 943 S.W.2d 64, 73-74 (Tex. App.CCorpus
Christi 1997, no writ) (The trial court did not abuse its discretion because a
substantial difference of opinion existed as to the proper construction of a
legal document.); 183/620 Group Joint Venture v. SPF Joint Venture, 765
S.W.2d 901, 904 (Tex. App.CAustin
1989, writ dism=d
w.o.j.) (The trial court reasonably concluded that a party had shown a probable
right of recovery where a bona fide dispute existed as to the construction of
contract documents.).

The
trial court did not abuse its discretion in granting the temporary injunction. 
We overrule Vaughn and East Coast=s
first issue.








In
their second issue, Vaughn and East Coast assert that the temporary injunction
fails to comply with Rule 683.  Rule 683 provides, in relevant part, that
orders granting injunctions Ashall
be specific in terms@
and Ashall describe in
reasonable detail and not by reference to the complaint or other document, the
act or acts sought to be restrained.@ 
Vaughn and East Coast contend that Sections III(b), (c), and (e) contain
inadequate descriptions of Acustomers@ and that, therefore, they
are vague, ambiguous, and overly broad.  They also contend that the
descriptions of the conduct to be restrained in Sections III(c) and (e) of the
order B Aany other interference@ and Aany conduct calculated to
interfere with, impair or disparage INTREPID=s
business relationships@
B are vague,
ambiguous, overly broad, and insufficient to apprise them of the restrained
activities.  Sections III(c) and (e) of the order require Vaughn and East Coast
not to interfere with Intrepid=s
customers and Intrepid=s
business relationships with its customers that are located within the
five-state restricted territory.  Section III(b) also relates to Intrepid=s customers in the
restricted territory.

The
trial court=s order
identified Chesapeake as Intrepid=s
customer.  Although the trial court=s
order did not identify Intrepid=s
other customers that were located within the five-state restricted territory,
Vaughn=s testimony
demonstrated that he either knew or could easily determine the identity of the
other customers.  Under these circumstances, the trial court=s order sufficiently
identified Intrepid=s
customers for the purposes of Rule 683.  See Amalgamated ACME Affiliates,
Inc. v. Minton, 33 S.W.3d 387, 397-98 (Tex. App.CAustin 2000, no pet.) (A temporary injunction
that did not specifically name the applicant=s
customers and advertisers complied with Rule 683 where the party enjoined
admitted it could identify the customers and advertisers.); Safeguard Bus.
Sys., Inc. v. Schaffer, 822 S.W.2d 640, 644 (Tex. App.CDallas 1991, no writ) (In
reviewing a permanent injunction, the court stated that A[o]rders generally restraining solicitation of
customers and not specifically listing the individual customers have not been
found to be overbroad.@). 
Vaughn=s knowledge of
Intrepid=s customer
base will allow him and East Coast to avoid violating the temporary
injunction.  The trial court=s
order described in reasonable detail the acts sought to be restrained and,
therefore, complied with Rule 683.  We overrule Vaughn and East Coast=s second issue.

This Court=s
Ruling

We
affirm the trial court=s
order granting the temporary injunction.

 

 

April 30, 2009                                                              TERRY
McCALL

Panel consists
of:  Wright, C.J.,                                     JUSTICE

McCall, J., and Strange, J.









[1]Intrepid terminated Vaughn=s and Mitchell=s
employment the day after filing this cause.