

# IN THE
# TENTH COURT OF APPEALS

## No. 10-09-00250-CV

**FINNEGAN, HENDERSON,
FARABOW,GARRETT & DUNNER, LLP,**

          **Appellant**

**v.**

**MELVIN RAY MERCER,**

          **Appellee**

---

**From the 85th District Court
Brazos County, Texas
Trial Court No. 09-001936-CV-85**

---

## MEMORANDUM OPINION

---

In this interlocutory appeal, Appellant Finnegan, Henderson, Farabow, Garrett & Dunner, LLP (Finnegan) complains that the trial court erred in denying its request for a temporary injunction. We will affirm.

### Background

Finnegan sued Appellee Melvin Ray Mercer for breach of contract and sought declaratory relief, a temporary restraining order, temporary and permanent injunctive

relief, and attorney's fees. The following evidence was presented at the temporary injunction hearing.

Finnegan, a national law firm, defended Sony Corporation, Sony EMCS Corporation, and Sony Electronics Inc. (collectively "Sony") in a patent-infringement suit filed by O2 Micro International Limited (O2 Micro). Mercer was hired to act as a "technical expert and consultant" for Finnegan in the case. Mercer signed a Retainer Agreement, which provides in part:

> 3. The discussions between Dr. Mercer and Finnegan . . . and any information received by Dr. Mercer relative to this Retainer Agreement or that he provides to Finnegan . . . will be kept in strict confidence by him. To the extent anyone from O2 Micro, its attorneys, or its agents contacts Dr. Mercer, he agrees not to have any discussions with them outside the physical presence of Finnegan . . . and only after providing Finnegan . . . with reasonable written notice of the time and place of such discussions. Further, Dr. Mercer acknowledges and agrees to assist Finnegan . . . , to the extent necessary and appropriate, in retaining any privilege, either attorney-client or work product, with respect to the materials which Finnegan . . . turns over to him during the course of this Retainer Agreement and further agrees not to waive any attorney-client privilege or work product immunity without the prior written permission of Finnegan . . . .
>
> 4. Dr. Mercer has advised Finnegan . . . , and confirms, that retaining him as a technical expert and consultant for the Civil Action will not create any conflict or potential conflicts with any responsibilities that he has as a result of his present or former employment or as a result of his other consulting work. Moreover, Dr. Mercer agrees that although he will function as a non-exclusive consultant to Finnegan . . . , he will not establish any new consulting or employment relationships in conflict with his obligations under this Agreement. In the event Dr. Mercer proposes to establish any additional consulting or employment relationships that may result in a conflict or potential conflict, during the period this Agreement is in effect, Dr. Mercer agrees that he will notify Finnegan . . . of the name and address of the other organization and will disclose to Finnegan . . . the nature of the other consulting arrangement to the extent it is permitted by the other organization. At that time, the parties will determine whether

an actual or potential conflict exists and the best manner of avoiding such a conflict, including possible termination of this Agreement.

5.     This Agreement shall be for a term commencing on the date of execution by Dr. Mercer and will extend until terminated by either party to this Agreement. Finnegan . . . or Dr. Mercer may terminate this Agreement at any time by providing the other party with written notice of such termination. However, the obligations assumed by Dr. Mercer pursuant to Paragraphs 3 and 4 shall survive termination of this Agreement for a period of three years.

Darren Jiron, a patent attorney with Finnegan, testified that, after Mercer had signed the Retainer Agreement, Jiron sent Mercer the five patents that were at issue in the Sony litigation for him to review. The patents are public documents. Finnegan attorneys also communicated with Mercer about setting up a face-to-face meeting to discuss the issues in the case. Those communications led to a videoconference between three Finnegan attorneys, including Jiron, and Mercer. Jiron stated that the first thirty minutes of the videoconference were spent getting to know Mercer and learning about his background and experience. They also discussed the technology involved in the case, including an overview of the five patents that Mercer had been asked to review, and spent some time talking about the allegations in the case and the general case strategies that the Finnegan attorneys had developed.[1] The videoconference lasted approximately four and one-half hours.

Jiron testified that he did not recall conversing with Mercer after the videoconference until July 3, 2007, approximately four and one-half months later, when he e-mailed Mercer that the Sony litigation was subject to a stay pending potential

---

[1] Mercer denies that Finnegan provided him with any of Sony's confidential information during the videoconference.

settlement. Sony later signed a license agreement that settled the litigation. Mercer did not submit a bill for payment for his services.

On October 1, 2008, Mercer contacted Jiron by both voicemail and e-mail to inform him that he had been approached by O2 Micro with a consulting opportunity in unrelated litigation and that he wanted confirmation for his files that he was not bound by the Retainer Agreement since it was his understanding that the Sony case had settled long ago and he had neither requested nor received payment for his services in that case. On October 7, 2008, Jiron sent Mercer a reply e-mail, stating that the Sony case had settled but that the Retainer Agreement "remains binding." Jiron also stated in his reply e-mail that Finnegan was checking with Sony regarding Mercer's request to work with O2 Micro on a project unrelated to the dispute between O2 Micro and Sony; however, Finnegan did not contact Sony. Instead, Finnegan determined that the issue involved its own work product, and it thus did not need to contact Sony.

Jiron testified that in February 2009, Finnegan began representing Monolithic Power Systems, Inc. (MPS) and ASUSTek (ASUS) in another suit filed by O2 Micro. On April 23, 2009, pursuant to the ground rules in the International Trade Commission (ITC) investigation, O2 Micro identified to all the parties in the case its intent to share confidential information with two individuals, one of them being Mercer. Jiron testified that Finnegan was shocked and, pursuant to the ground rules, raised an objection to the other side. Jiron explained that there is a ten-day period after an objection is raised in which the parties are to confer and see if they can resolve the dispute. Jiron testified

that Finnegan had several communications with opposing counsel, but the dispute was not resolved.

Finnegan then filed a motion to intervene in the ITC investigation for the limited purpose of attempting to enforce the provisions of the Retainer Agreement and to disqualify Mercer as an expert in the case. The administrative law judge denied Finnegan's motion to intervene, and Mercer was not disqualified as an expert. Jiron testified that Mercer's breach of the Retainer Agreement was causing Finnegan to suffer irreparable harm.

After Jiron testified at the temporary injunction hearing, the trial court asked Finnegan's counsel to explain why he believed Finnegan had standing. The court then signed an order stating that, after determining Finnegan lacked standing and had an adequate remedy at law, Finnegan's request for a temporary injunction was denied.

**Discussion**

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Id.* To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* A probable right to the relief sought is shown by alleging a cause of action and presenting evidence that tends to sustain it. *Vaughn v. Intrepid Directional Drilling Specialists, Ltd.*, 288 S.W.3d 931, 936 (Tex. App.—Eastland 2009, no pet.); *Tanguy v. Laux*,

259 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2008, no pet.). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204.

In its first issue, Finnegan argues that the trial court erred in denying its request for a temporary injunction based on lack of standing.

Standing is a component of subject-matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993). The standing doctrine requires that there be a real controversy between the parties that will be actually determined by the judicial declaration sought. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005); *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001). A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority. *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). Because standing is a component of subject-matter jurisdiction, we consider Finnegan's standing as we would a plea to the jurisdiction. *See Brown*, 53 S.W.3d at 305 n.3; *Dass, Inc. v. Smith*, 206 S.W.3d 197, 201 (Tex. App.—Dallas 2006, no pet.).

Generally, a trial court looks to the allegations of a plaintiff's petition to determine standing. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). However, under certain circumstances, when deciding a jurisdictional challenge, a trial court may go beyond the allegations in the pleadings and consider evidence. *See id.* at 227 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.

2000)); *Sarah v. Primarily Primates, Inc.*, 255 S.W.3d 132, 142-43 (Tex. App.—San Antonio 2008, pet. denied) (in determining jurisdictional issue, court considered contract entered into evidence at hearing on motion to dismiss). Here, Finnegan's petition incorporated the Retainer Agreement by reference. Finnegan's trial counsel also entered the Retainer Agreement into evidence at the temporary injunction hearing. Thus, the Retainer Agreement is evidence that the trial court considered in deciding Finnegan's request for injunctive relief, and, because it is necessary to resolve the jurisdictional issue, we will consider it on appeal. *See Miranda*, 133 S.W.3d at 227.

Finnegan argues that it, in addition to Sony, has standing to sue on the Retainer Agreement because it has its own rights and interests in the contract. Conversely, Mercer argues that Finnegan has no independent interest in the Retainer Agreement outside of the interest owned by Sony. We agree with Mercer.

Finnegan is not a party to the Retainer Agreement. *See Am. Heritage, Inc. v. Nev. Gold & Casino, Inc.*, 259 S.W.3d 816, 820 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("A party to a contract has standing to maintain a suit on the contract.") (citing *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 618 (Tex. 2004)). The first paragraph of the Retainer Agreement expressly states: "This Agreement is entered into by and between Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P. ("Finnegan, Henderson"), *on behalf of* Sony Corporation, Sony EMCS Corporation, and Sony Electronics Inc., (collectively "Sony") and Dr. Melvin Ray Mercer ("Dr. Mercer") . . . ." (Emphasis added.) Likewise, Finnegan signed the Retainer Agreement as "Attorneys

for Sony Corporation, Sony EMCS Corporation, and Sony Electronics Inc.," rather than in its principal capacity.

Generally someone who is not a party to an agreement has no interest in the terms of that contract. *Wells v. Dotson*, 261 S.W.3d 275, 284 (Tex. App.—Tyler 2008, no pet.) (citing *Grinnell v. Munson*, 137 S.W.3d 706, 712 (Tex. App.—San Antonio 2004, no pet.)); *El Paso Cmty. Partners v. B & G/Sunrise Joint Venture*, 24 S.W.3d 620, 626 (Tex. App.—Austin 2000, no pet.). However, a person who is not in privity to the written agreement may show that he is eligible to bring an action on the contract as a third-party beneficiary. *Wells*, 261 S.W.3d at 284.

There is a presumption against conferring third-party-beneficiary status on noncontracting parties. *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007). In deciding whether a third party may enforce or challenge a contract between others, it is the contracting parties' intent that controls. *Id.* The intent to confer a direct benefit upon a third party "must be clearly and fully spelled out or enforcement by the third party must be denied." *Id.* (quoting *MCI Telecommc'ns Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). Incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract. *Id.* A third party may only enforce a contract when the contracting parties themselves intend to secure some benefit for the third party and entered into the contract directly for the third party's benefit. *Id.* To qualify as one for whose benefit a contract was made, the third party must benefit more than incidentally; he must be either a donee or creditor beneficiary. *Id.* A person is a donee beneficiary if the performance promised will come to him as a pure donation. *Id.*

If performance will come to satisfy a duty or legally enforceable commitment owed by the promisee, then the third party is considered a creditor beneficiary. *Id.*

Finnegan contends that, by entering into the Retainer Agreement, the parties to the contract intended to protect Finnegan's own personal interest in its confidences and work product. However, the Retainer Agreement expressly provides, "Dr. Mercer acknowledges that any information received under this Agreement remains the property of *Sony*." (Emphasis added.) The language of the contract thus reveals that the parties' intent was to protect the interests of Sony, not Finnegan. Therefore, we conclude that Finnegan lacks standing to sue Mercer for breach of contract.

Nor has Finnegan shown that it has standing to seek declaratory relief regarding the Retainer Agreement. Section 37.004(a) of the Declaratory Judgment Act provides in pertinent part, "A person . . . whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (Vernon 2008). However, as explained above, Finnegan possesses no enforceable contractual rights under the Retainer Agreement.

Because Finnegan lacks standing to sue Mercer for breach of contract or for declaratory relief, Finnegan did not establish that it has a cause of action against Mercer. *See Butnaru*, 84 S.W.3d at 204. As a result, we hold that the trial court properly denied Finnegan's request for a temporary injunction because Finnegan lacked standing. We

overrule Finnegan's first issue and need not address its second issue.  *See* TEX. R. APP. P. 47.1.

## Conclusion

Having overruled Finnegan's first issue, we affirm the trial court's order denying Finnegan's request for a temporary injunction.


                                    REX D. DAVIS
                                    Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
        (Chief Justice Gray dissents to the Court's affirmation of the trial court's judgment.  A separate opinion will not issue.  Chief Justice Gray notes, however, that if the Court is to maintain a parochial view of the legal profession, the result may be correct.  But because he believes the Court must recognize the national and international implication of our decisions, the Court cannot take such a narrow view of this proceeding.  He believes when the transaction is taken in context, it is Finnegan's contract that recognizes the client's obligation to pay, or at the very least, Finnegan was an intended third party beneficiary of the contract known to Mercer.  Under either view, the trial court erred by not granting a temporary injunction.  He respectfully dissents.)
Affirmed
Opinion delivered and filed December 30, 2009
[CV06]