**AMERISTAR JET CHARTER, INC., Appellant,**

v.

**Charles Jeff COBBS and Falcon Air Charter, L.L.C., Appellees.**

No. 05–04–01356–CV.

Court of Appeals of Texas, Dallas.

Jan. 20, 2006.

Rehearing Overruled March 3, 2006.

Richard Illmer, Chad Andrew Johnson, Brown, McCarroll, L.L.P., Dallas, for appellant.

Robert F. Maris, Maris & Lanier, P.C., Dallas, for appellees.

Before Justices MORRIS, WRIGHT, and RICHTER.

## OPINION

Opinion by Justice MORRIS.

This is an appeal from a jury verdict in favor of appellees Charles Jeff Cobbs and his company, Falcon Air Charter, L.L.C., in a lawsuit they brought for declaratory judgment and damages. The lawsuit arose out of a dispute between Cobbs and his former employer, appellant Ameristar Jet Charter, Inc. In its appeal, Ameristar challenges the legal and factual sufficiency of the jury's adverse findings on appellees' claim for malicious prosecution and also on Ameristar's counterclaim against Cobbs for breach of fiduciary duty. Ameristar further challenges the trial court's failure to award it attorney's fees on appellees' declaratory judgment action. Appellees raise two conditional cross-issues asserting the trial court erred in granting Ameristar a judgment notwithstanding the verdict on appellees' claims for tortious interference with an existing contract and wrongful injunction. For the reasons that follow, we affirm the trial court's judgment in part and reverse and render judgment in part.

## I.

From 1994 to 2002, Cobbs worked for Ameristar, a large on-demand air cargo charter company. Ameristar flies cargo throughout North America on its own planes and also subcontracts other carriers' planes when its planes are unavailable. The case arises out of a dispute that occurred after Cobbs left Ameristar's employment. Shortly after resigning from Ameristar, Cobbs, through his company Falcon Air, began to manage a single Falcon 20 aircraft owned by Tech Air Services, L.L.C. Specifically, Ameristar and appellees disagreed about whether Cobbs had usurped Ameristar's opportunity to use Tech Air's Falcon. Also, the parties disagreed about whether Cobbs was using Ameristar's confidential information to compete with Ameristar, in violation of a confidentiality agreement Cobbs had signed with Ameristar.

Cobbs instituted this lawsuit one week after he resigned from Ameristar. Among other things, he sought a declaratory judgment that the confidentiality agreement with Ameristar was unenforceable. In response, Ameristar filed a counterclaim for breach of fiduciary duty, tortious interference with prospective contract, breach of contract, and misappropriation of trade secrets. Ameristar also sought and obtained a temporary injunction preventing Cobbs and Falcon Air from doing business with Tech Air and Tech Air's owner, Robert Brown.[1] The trial court enjoined appellees from working with Tech Air and Brown for over three months before it dissolved the temporary injunction. After the injunction was lifted, appellees amended their pleadings to assert claims for malicious prosecution, wrongful injunction, and tortious interference with an existing contract. They also sought, in response to Ameristar's claim for misappropriation of trade secrets, an additional declaration that certain items were not trade secrets.

The case was tried to a jury. It found Ameristar wrongfully enjoined appellees,

1. Ameristar also sued Brown and Tech Air. Tech Air, in turn, asserted claims for wrongful injunction, malicious prosecution, and tortious interference with contract against Ameristar. Neither Brown nor Tech Air are parties to this appeal.

maliciously prosecuted the injunction, and intentionally interfered with Falcon Air's contract with Tech Air. The jury also found that appellees did not breach any fiduciary duty owed to Ameristar, misappropriate any of Ameristar's trade secrets, breach the confidentiality agreement, or tortiously interfere with any prospective contract of Ameristar. The jury found only a portion of the items claimed by Ameristar to be trade secrets.

In accordance with the jury verdict, the trial court rendered judgment in favor of appellees on their malicious prosecution claim and awarded Ameristar a take-nothing judgment on its affirmative claims. The trial court also rendered a declaratory judgment in accordance with the jury findings with respect to trade secrets and awarded appellees attorney's fees in an amount stipulated by the parties. The trial court, however, granted Ameristar's judgment notwithstanding the verdict with respect to appellees' wrongful injunction and tortious interference claims. This appeal followed.

## II.

In its first issue, Ameristar challenges the legal and factual sufficiency of the evidence to support the jury's adverse finding on its breach of fiduciary duty claim. Specifically, it contends the trial evidence establishes, as a matter of law, that Cobbs breached his fiduciary duty to Ameristar. Alternatively, it argues the jury finding on this issue is against the great weight and preponderance of the evidence.

■ A party challenging the legal sufficiency of the evidence supporting an adverse finding on an issue on which it had the burden of proof must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chemical Co. v. Francis,*

46 S.W.3d 237, 241 (Tex.2001). In reviewing such a challenge, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). When a party challenges the factual sufficiency of the evidence supporting an adverse finding on which it bore the burden of proof, it must demonstrate the adverse finding is against the great weight and preponderance of the evidence. *Francis,* 46 S.W.3d at 242. Only if we determine, after considering all the evidence, the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust will we set aside the verdict for factual insufficiency. *Id.*

■ Although the jury found Cobbs owed a fiduciary duty to Ameristar, it also found that Cobbs did not breach this fiduciary duty. Ameristar contends the evidence that Cobbs, while working for Ameristar, formed a competing business without telling Ameristar and encouraged Brown and Tech Air to do business with him and not with Ameristar establishes, as a matter of law, that Cobbs breached his fiduciary duty to Ameristar. It also asserts Cobbs's solicitation of customers that the jury found to be trade secrets of Ameristar conclusively establishes such a breach. We do not agree.

It is undisputed that Cobbs filed the paperwork to form Falcon Air before he resigned from Ameristar. There was no evidence, however, that Falcon Air actually competed with Ameristar while Cobbs was an Ameristar employee. In fact, Cobbs testified he did not work out a deal with Brown to manage Tech Air's Falcon until after he left Ameristar. Only after the deal was struck with Brown did Cobbs

begin booking flights for Tech Air's Falcon. The mere formation of Falcon Air while Cobbs was still an Ameristar employee is therefore no basis for concluding, as a matter of law, that Cobbs breached his fiduciary duty to Ameristar.

■ Ameristar also argues the evidence conclusively establishes Cobbs, while still its employee, breached his fiduciary duty with respect to his dealings with Brown and Tech Air. At the outset, we note the jury found that the Tech Air opportunity was not a trade secret of Ameristar and Ameristar has not challenged that finding. Additionally, there was conflicting evidence with respect to the business opportunity presented by Brown and Tech Air. Ameristar's president testified that he instructed Cobbs to find out the story on Tech Air's Falcon after noticing the plane was on the ground for long periods of time. Cobbs testified, however, that during his employment with Ameristar, no one ever instructed him to get information on, or expressed interest in, Tech Air's Falcon. Cobbs stated that he inquired about Tech Air's Falcon strictly as a possible employment opportunity for himself. Ameristar's president Tom Wachendorfer admitted that, throughout its history, Ameristar had never done a long-term lease agreement on a Falcon. Both Wachendorfer and Cobbs acknowledged that, absent a long-term lease, using another carrier's plane would generally reduce Ameristar's profit margin. Cobbs further testified that, immediately after he told Ameristar about his intentions to use Tech Air's Falcon to start his own business, Ameristar implemented a policy prohibiting its own use of Tech Air's Falcon. This policy remained in effect until after the trial court granted Ameristar's request for a temporary injunction.

The jury was instructed that if a corporation abandons a business opportunity, the taking of that opportunity by a person who is a fiduciary cannot serve as the basis for breach of a fiduciary duty. According to Cobbs, Ameristar never expressed an interest in Tech Air's Falcon before or after he disclosed his plans to use the aircraft. In fact, the evidence indicated Ameristar immediately implemented a policy prohibiting Ameristar's use of the Falcon after Cobbs informed Ameristar of his intentions to use the aircraft. Based on this evidence, the jury could have found that Ameristar abandoned any potential opportunity presented by Tech Air's Falcon. We therefore conclude Cobbs's actions with respect to the Tech Air opportunity do not conclusively establish a breach of his fiduciary duty to Ameristar nor do they establish the jury's adverse finding on this issue was clearly wrong or unjust.

■ Also under its first issue, Ameristar urges us to reverse the judgment on its breach of fiduciary duty claim because appellees solicited several brokers and carriers that the jury found to be trade secrets of Ameristar.[2] Although the jury found five of the brokers and carriers appellees solicited were trade secrets of Ameristar, it also found appellees did not misappropriate any of these trade secrets and complied with Ameristar's confidentiality agreement.

Cobbs presented extensive testimony on the methods he used to solicit business. He testified that he used the internet by searching various keywords, the *Air Now* bulletin, and trade publications, including

2. Brokers are companies in the on-demand air cargo industry that do not own their own aircraft. They act as a middleman between shippers and carriers. Carriers own their own aircraft. A carrier may act as a broker if its aircraft is unavailable to meet a shipper's need.

an air charter guide. He denied taking or utilizing any of Ameristar's information with respect to its customers. He further indicated all contact information he used for solicitations was in the public domain. According to the confidentiality agreement Cobbs signed with Ameristar, confidential information did not include "any information which is or lawfully becomes public information through no act, direct or indirect, of Employee." Cobbs's mere solicitation of brokers and carriers the jury found to be trade secrets, absent a finding that Cobbs improperly obtained or utilized these trade secrets, does not compel a finding that Cobbs breached his fiduciary duty to Ameristar. Accordingly, we will not disturb the jury finding with respect to Ameristar's breach of fiduciary duty claim. Having concluded the evidence is legally and factually sufficient to support the jury's adverse findings on Ameristar's breach of fiduciary duty claim, we resolve Ameristar's first issue against it.

■ In its second issue, Ameristar contends the trial court erred in signing a judgment for appellees on their malicious prosecution claim arising out of the temporary injunction. Among other things, Ameristar complains there was no evidence that appellees were damaged by the injunction because there was no evidence they ever made a profit with Tech Air's Falcon.

To succeed on their malicious prosecution claim, appellees had to establish that the injunction suit was prosecuted maliciously and without probable cause, was terminated in their favor, and the issuance of the injunction caused them damages. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 686 (Tex.1990). Our focus is on the issue of damages. The trial court instructed the jury to consider only appellees' lost profits or, in the alternative, if appellees' lost profits were not readily ascertainable, Ameristar's profits. Cobbs provided the sole evidence on Falcon Air's lost profits.[3] On direct examination, his testimony in its entirety on this issue was as follows:

Q. Let me ask you this. Falcon Air, was Falcon Air able—ever able to make a profit?

A. No.

Q. At the end of the year—the first year of the operation, the end of 2002, was Falcon Air able to make a profit?

A. No.

Q. At the end of 2003, was it able to make a profit?

A. No.

* * *

Q. Were you able to make money, or at least positive money, above overhead before the injunction?

A. Yes, I was.

Q. Had you ever been able to make a profit or positive money after the injunction?

A. No.

* * *

Q. Are you—I know—I know that your company has never been able to up to this point to make a profit, but are you able to ascertain a dollar amount of damages that Ameristar has cost you?

A. No.

■ To recover lost profits, the amount of the loss must be shown by competent

---

3. During oral argument, appellees' counsel indicated that Ameristar's exhibit 24 provided additional evidence on gross profits for Tech Air's Falcon. Our review of the record reveals, however, that this exhibit was never admitted into evidence. As such, we will not consider it in our analysis.

evidence with reasonable certainty. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 505 (Tex.2001). Given this rule, the injured party must do more than merely show it suffered some lost profits. *See El Dorado Motors, Inc., v. Koch,* 168 S.W.3d 360, 366 (Tex.App.-Dallas 2005, no pet. h.). Appellees' evidence was clearly legally insufficient under the first part of the jury's damage instruction. Even under the alternative presented by the trial court's jury charge, appellees were required, at a minimum, to show that they sustained some lost profits and that the dollar amount of those lost profits was unascertainable. The above testimony, however, is legally insufficient to support such a finding. Cobbs's conclusory statements that he made "positive money" before the injunction and that the dollar amount of his damages was unascertainable do not establish that appellees lost any profits as a result of Ameristar's actions. Indeed, Cobbs's conclusory testimony was predicated on nothing more than unsupported, speculative assumptions. Appellees presented no objective facts, figures, data, or other evidence of historical profitability to support their position that Falcon Air was economically viable or that its purported lost profits were unascertainable. Because there was no evidence to support the jury's finding on lost profits, we resolve Ameristar's second issue in its favor.

In its third issue, Ameristar asserts the trial court abused its discretion in failing to award it attorney's fees on appellees' declaratory judgment action because Ameristar prevailed on appellees' claims for declaratory relief. Pursuant to section 37.009 of the Declaratory Judgment Act, the trial court has discretion to award reasonable and necessary attorney's fees "as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997); *FM Properties Operating Co. v.*

*City· of Austin,* 22 S.W.3d 868, 888 (Tex. 2000). Unlike other statutes, the Act does not require an award of attorney's fees to the prevailing party. *See Bocquet v. Herring,* 972 S.W.2d 19, 20 (Tex.1998). We will not disturb the trial court's determination with respect to attorney's fees absent a showing that the trial court abused its discretion. *Id.* at 21.

Here, appellees sought a declaration that the confidentiality agreement Cobbs signed with Ameristar was unenforceable under the Texas Business and Commerce Code because it was against public policy and lacked consideration. They also requested an order prohibiting Ameristar from enforcing the agreement because of unclean hands, lack of consideration, estoppel and waiver. Finally, they requested a declaration of the parties' rights under the agreement, that certain customers identified by Ameristar were not trade secrets, and that appellees could compete with Ameristar using such information. Appellees substantially succeeded on their declaratory judgment action to the extent the jury found that the Tech Air opportunity and eight of the thirteen Ameristar customers listed were not trade secrets as Ameristar claimed. We therefore conclude the trial court did not abuse its discretion in denying Ameristar attorney's fees. We resolve Ameristar's third issue against it.

Because we have resolved Ameristar's second issue in its favor, we next address appellees' conditional cross-issues attacking the trial court's judgment notwithstanding the verdict on their tortious interference and wrongful injunction claims.

Ameristar moved for a judgment notwithstanding the verdict on appellees' tortious interference claim contending it was entitled to judgment as a matter of law because the claims were barred by the Noerr–Pennington doctrine of immunity and Ameristar was merely exercising its

bona fide legal rights under the confidentiality agreement. In their first cross-issue, appellees contend the trial court erred in granting Ameristar's motion for judgment notwithstanding the verdict on their tortious interference claim because Ameristar failed to plead the Noerr–Pennington doctrine as an affirmative defense. Appellees have not challenged on appeal Ameristar's second ground asserted in its motion for judgment. Because the trial court's judgment notwithstanding the verdict can be affirmed on this unchallenged alternative ground, we need not address the merits of appellees' argument. *See Perez v. Tex. Dept. of Prot. and Reg Serv.,* 148 S.W.3d 427, 433–34 (Tex.App.-El Paso 2004, no pet.). To the extent appellees attempt to address this alternative ground in their surreply brief, we note the Texas Rules of Appellate Procedure do not allow appellees to include in a reply brief a new cross-issue in response to a matter raised in appellant's reply brief but not raised in appellees' original brief. *See Howell v. Tex. Workers' Comp. Comm'n,* 143 S.W.3d 416, 439 (Tex.App.-Austin 2004, pet. denied).

In their second cross-issue, appellees challenge the trial court's judgment notwithstanding the verdict on their wrongful injunction claim. A cause of action for wrongful injunction is predicated on a breach of the injunction bond's condition that the injunction applicant will abide by the court's decision and will pay all sums adjudged against it if the temporary injunction is dissolved in whole or in part. *DeSantis,* 793 S.W.2d at 685. The damages recoverable in an action on an injunction bond are limited to the amount of the bond. *Id.* at 686. Here, it is undisputed that the trial court released the injunction bond at the time it dissolved the temporary injunction. Appellees did not object to the release of the bond. Because there

is no injunction bond on which to base appellees' wrongful injunction claim, the trial court did not err in granting a judgment notwithstanding the verdict on this cause of action. In reaching this conclusion, we necessarily reject appellees' contention that the trial court erred in denying their post-trial request to reinstate the bond. Appellees have not provided any authority, nor have we found any, that would support their position. We therefore resolve appellees' second cross issue against them.

In conclusion, we reverse the trial court's judgment on appellees' malicious prosecution claim and render judgment that appellees take nothing on that claim. We affirm the trial court's judgment in all other respects.