**Opinion issued June 25, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00501-CV
_____

**PHILIPPE TANGUY, Appellant**

**V.**

**DAVID LAUX INDIVIDUALLY AND AS GENERAL PARTNER OF THE LAUX/DAVIS TAX CONSULTING AND TAX INVESTMENT PARTNERSHIP, AND THE LAUX/DAVIS TAX CONSULTING AND INVESTMENT PARTNERSHIP, Appellees**

---

On Appeal from the 165th District Court
Harris County, Texas
Trial Court Case No. 2007-44578A

---

**MEMORANDUM OPINION**

Appellant, Philippe Tanguy, challenges the trial court's judgment, entered after a jury trial, in favor of appellees, David Laux, individually and as general partner of the David Laux/Richard Davis Tax Consulting and Tax Investment Partnership (the "Laux/Davis Partnership"), and the Laux/Davis Partnership, on Tanguy's counterclaims against them for wrongful injunction, malicious prosecution, fraud, slander of title, and breach of contract.[1]  In eight issues, Tanguy contends that the trial court erred in striking his claims against Laux, in his capacity as a partner, and the Laux/Davis Partnership; not awarding him attorney's fees on Laux's fraudulent-transfer claim; not submitting a jury question and entering judgment in his favor on his claim for wrongful injunction; denying his motion for mistrial; and in admitting certain evidence.

We affirm in part and reverse and remand in part.

## Background

In his petition, Laux alleged that in 2004 he sued Davis, his business partner, for breach of contract because Davis had failed to pay him certain "proceeds related commissions."[2]  After Laux obtained a judgment against Davis in the amount of $384,126.94, he began a search for Davis's assets and located a 1968 de Havilland Twin Otter aircraft (the "aircraft") registered to Davis.  Laux then filed

---

[1]  Davis is not a party to this appeal.

[2]  *Laux v. Davis*, No. 2004-18555 (152nd Dist. Ct., Harris Cnty, Tex., filed Apr. 12, 2004).

an application for turnover relief. However, six days later, on May 3, 2007, Davis filed with the Federal Aviation Administration ("FAA") registry a bill of sale, purporting to have previously transferred the aircraft to Tanguy. On June 12, 2007, Davis filed for bankruptcy relief.

Laux then sued Tanguy, alleging that Tanguy had acquired the aircraft from Davis through a fraudulent transfer.[3] Laux sought a temporary restraining order ("TRO") and then a temporary injunction to prohibit Tanguy from transferring or relocating the aircraft. In August 2007, the trial court, after granting the TRO and holding a hearing, issued a temporary injunction prohibiting Tanguy from "selling, encumbering, transferring and/or relocating from the county" the aircraft. And the trial court made the injunction conditional on Laux posting a bond of $500.00.

Tanguy bought an interlocutory appeal to this Court, arguing that the trial court had erred in granting the temporary injunction because Laux did not have a lien on Davis's personal property, had not recorded a lien with the FAA, and had no greater right in the aircraft than had Davis.[4] We noted that the bill of sale for the aircraft was dated nine months after Laux had obtained his judgment against Davis and six weeks before Davis had filed for bankruptcy relief. *Id.* at 859. And we held that the trial court did not err in issuing the temporary injunction. *Id*.

---

[3]     *See* TEX. BUS. & COM. CODE ANN. §§ 24.001–.013 (Vernon 2015) (the "Texas Uniform Fraudulent Transfer Act").

[4]     *Tanguy v. Laux*, 259 S.W.3d 851, 853–54 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

In July 2010, Tanguy filed in the trial court a motion to dissolve the injunction on the ground that the trustee in Davis's bankruptcy proceeding had filed an action alleging that Tanguy owned the aircraft and owed the balance on his purchase note to the bankruptcy estate. He further asserted that the United States Bankruptcy Court had held that there was "no dispute regarding the existence of [Tanguy's purchase] note or its maker," he had stipulated that the trustee was the owner and holder of the note, and he owed $1,161,566 to the bankruptcy trustee. On August 5, 2010, the trial court granted Tanguy's motion, dissolving the injunction. Tanguy then moved for summary judgment on Laux's fraudulent-transfer claim, and the trial court later granted the motion.

Tanguy also brought counterclaims against Laux for wrongful injunction, malicious prosecution, fraud, slander of title, and breach of contract, seeking "actual damages" and attorney's fees. He asserted that Laux, "after intentionally asserting the meritless" fraudulent-transfer claim against him, "continued to intentionally and maliciously prosecute" the claim. And, "[a]s a result of the wrongfully issued temporary restraining order and the subsequently obtained temporary injunction," Tanguy was prevented from making the aircraft profitable through leases or sale. Tanguy argued that because he had "prevailed" on Laux's fraudulent-transfer claim, the trial court "may award [him] all reasonable costs and attorney's fees."

At the trial on his counterclaims, Tanguy testified that he met Laux in 1998 while participating in a skydiving team at Skydive Houston, a business operated by Davis. Tanguy explained that Laux and Davis, who had been working together in a "tax investment business" or "tax partnership," had several assets associated with the skydiving business. The assets included a skydiving center, land, the aircraft at issue in this suit, and equipment—all of which were "structured in various different partnerships." Laux and Davis offered Tanguy an opportunity to invest in these "partnerships" to obtain certain tax benefits.

Tanguy explained that from 2002 to 2004, he had invested in various fractional interests of Laux and Davis. In January 2006, Davis offered to sell him a company, "13,500 Air Express, LLC," and the aircraft. He and Davis then executed a purchase agreement and note, pursuant to which Tanguy agreed to pay Davis $1,237,500, with $12,500 as a down payment and installment payments of $10,000 per month, beginning one year later, in January 2007, and continuing for 123 months, with no interest. In January and March 2007, Tanguy made payments of $26,000 and $24,000, respectively. And he continued to make his monthly payments of $10,000 throughout 2007. When Davis filed for bankruptcy relief on June 12, 2007, Tanguy began making his payments to the bankruptcy trustee. However, after Laux obtained the temporary injunction prohibiting Tanguy from moving, leasing, or selling the aircraft, Tanguy was unable to maintain a profit, or

to lease or sell it. He then stopped making payments in late 2008. And in 2008, Tanguy lost a specific sale of the aircraft because of the injunction. The aircraft then fell into disrepair and was grounded in 2009.

Laux testified that he and Davis were business partners, his role was to help Davis "find people" who could become investors in certain "tax shelters," and Davis had agreed to pay him a percentage of any sums invested. Laux explained that although he had brought Davis various investors, including Tanguy, Davis had failed to pay him as agreed. Laux then sued and obtained a judgment against Davis, located the aircraft, and obtained the underlying injunction.

The jury found that Laux did not maliciously prosecute Tanguy, commit fraud against Tanguy, or commit slander of title against Tanguy. It further answered that Tanguy had incurred $100,000 in reasonable and necessary attorney's fees. The trial court then rendered judgment in favor of Laux and ordered that Tanguy take nothing on his counterclaims.

**Wrongful Injunction**

In his fourth issue, Tanguy, in regard to his wrongful injunction claim, argues that the trial court erred in not awarding him the $500 injunction bond posted by Laux because he presented "proof that the TRO and temporary injunction were improperly entered and were dissolved." In his fifth issue, Tanguy argues that the trial court erred in not submitting to the jury an "instruction" on his

6

wrongful-injunction claim because there was a "fact issue concerning [his] entitlement to payment of Laux's injunction bond upon the dissolution of Laux's wrongful injunction."

A person who wrongfully obtains an injunction is liable for damages caused by issuance of the injunction. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 685 (Tex. 1990). "There are two separate causes of action for wrongful injunction, one upon the bond ordinarily filed to obtain the injunction, and the other for malicious prosecution." *Id.*; *see also* TEX. R. CIV. P. 684 (providing trial court must, in granting "any" temporary restraining order or temporary injunction, "fix the amount of security to be given by the applicant").

"A cause of action for wrongful injunction is predicated on a breach of the injunction bond's condition that the injunction applicant will abide by the court's decision and will pay all sums adjudged against it if the temporary injunction is dissolved in whole or in part." *Ameristar Jet Charter, Inc. v. Cobbs*, 184 S.W.3d 369, 377 (Tex. App.—Dallas 2006, no pet.); *see DeSantis*, 793 S.W.2d at 685 (citing TEX. R. CIV. P. 684). "The purpose of the bond is to protect the defendant from the harm he may sustain as a result of temporary relief granted upon the reduced showing required of the injunction plaintiff, pending full consideration of all issues." *DeSantis*, 793 S.W.2d at 685–86.

7

To prevail in an action on an injunction bond, the claimant must prove that the TRO or temporary injunction was issued or perpetuated when it should not have been and was later dissolved. *Id.* The claimant need not prove that the injunctive relief was obtained maliciously or without probable cause. *Id.* at 686. To prevail on a malicious prosecution cause of action for wrongful injunction, the claimant "must prove that the injunction suit was prosecuted maliciously and without probable cause and was terminated in the claimant's favor." *Id.*

The damages recoverable in an action on an injunction bond are limited to the amount of the bond. *Id.* "In an action for malicious prosecution, all actual damages may be recovered." *Id.* "Under either cause of action the claimant must prove that issuance of the injunction caused him damages." *Id.* He cannot recover for having been prohibited from doing something that he had no right to do. *Id.*

Here, Laux sued Tanguy under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), which creates a statutory cause of action through which a creditor may seek recourse for a fraudulent transfer.[5] *See* TEX. BUS. & COM. CODE ANN. §§ 24.001—.013 (Vernon 2015); *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 25 (Tex. App.—Tyler 2000, pet. denied). And the trial court granted Laux

---

[5] A transfer by a debtor is fraudulent if made with the intent to hinder, delay, or defraud his creditors by placing the debtor's property beyond the creditor's reach. *Nobles v. Marcus*, 533 S.W.2d 923, 925 (Tex. 1976).

interim injunctive relief, conditioned on his payment of a $500.00 bond. *See* TEX. BUS. & COM. CODE ANN. § 24.008(a)(3)(A); TEX. R. CIV. P. 684.

Laux was not required to establish that he would prevail at trial. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). His burden was simply to establish a probable right of recovery following a trial on the merits and a probable injury in the interim, warranting preservation of the status quo pending trial. *See id.* at 57. In Tanguy's interlocutory appeal from the trial court's temporary injunction, this Court held that Laux did establish a probable right of recovery and a probable injury in the interim, warranting preservation of the status quo pending trial. *Tanguy v. Laux*, 259 S.W.3d 851, 858–59 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding "[n]one of Tanguy's contentions undermine[ed] Laux's showing of a probable right to recover"). "An injunction is only wrongful if its issuance was wrongful at its inception or if it was continued in effect due to some wrong on the part of the proponent." *I.P. Farms v. Exxon Pipeline Co.*, 646 S.W.2d 544, 545 (Tex. App.—Houston [1st Dist.] 1982, no writ). "Unless an injunction has been wrongfully issued, damages, except to property, are precluded as a matter of law." *Id.*

Further, Tanguy has not asserted that Laux breached any condition of the bond. *See DeSantis*, 793 S.W.2d at 685 (citing TEX. R. CIV. P. 684)); *Ameristar Jet Charter, Inc.*, 184 S.W.3d at 377 (noting cause of action for wrongful injunction

9

"is predicated on a breach of the injunction bond's condition that the injunction applicant will abide by the court's decision and will pay all sums adjudged against it if the temporary injunction is dissolved in whole or in part"); *see also Castaño v. San Felipe Agr., Mfg., & Irr. Co.*, No. 04-01-00822-CV, 2003 WL 288276, at *5 (Tex. App.—San Antonio Feb. 12, 2003, no pet.) (mem. op.).

In sum, Tanguy has not established that he is "entitled to recover the $500.00 bond as a matter of law" or he presented a fact issue concerning his "entitlement to payment of Laux's injunction bond." Accordingly, we hold that the trial court did not err in not awarding Tanguy the $500 bond, nor did it err in not submitting a question to the jury on this issue.

We overrule Tanguy's fourth and fifth issues.

## Improper Jury Argument

In his sixth and seventh issues, Tanguy argues that the trial court erred in denying his motion for curative instruction and mistrial. According to Tanguy, "Laux's improper jury argument mandates reversal" because the jury argument and comments of Laux's trial counsel, in which he asserted that Tanguy and his attorney had engaged in criminal activity, are not supported by the record evidence and were incurable.

Generally, complaint of improper jury argument must, at the time the argument occurs, be preserved by an objection and a request for an instruction that

the jury disregard the improper remark. *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009); *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 840–41 (Tex. 1979). "Typically, retraction of the argument or instruction from the court can cure any probable harm, but in rare instances the probable harm or prejudice cannot be cured." *Living Ctrs. of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 680 (Tex. 2008). If the argument is incurable, a complaint about the argument may be made for the first time on appeal even though an objection was not timely made. *Id.*

An improper argument is incurable if it, "by its nature, degree, and extent constitute[s] such error that an instruction from the court or retraction of the argument could not remove its effects." *See id*. at 681. Incurable argument is rare and usually encompasses appeals to racial prejudice; unsupported charges of perjury; unsupported, extreme, and personal attacks on opposing parties and witnesses; or baseless accusations of witness tampering. *Id*. Also, unsupported charges that opposing counsel manufactured evidence, suborned perjury, or was untruthful are highly improper and are generally considered to be incurable. *See Reese*, 584 S.W.2d at 840; *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 643 (Tex. App.—Waco 2000, pet. denied).

Tanguy asserts that Laux's trial counsel, Simon, "inferred that Tanguy and his attorney Izen were engaged in [] criminal activity" that involved "funneling

11

payments on the aircraft back to Izen's criminal client Davis." And "[t]here was no proof of this accusation in the record which first appeared in Simon's [o]pening [a]rgument and was continued throughout the trial." During Simon's opening statement, the following exchange occurred:

| | |
|---|---|
| [Simon]: | . . . . [Davis] has a criminal lawyer. That's him right there. |
| [Wojciechowski]: | I'm going to object, Your Honor. That is totally irrelevant. It's outside— |
| [Simon]: | It's in the evidence. |
| THE COURT: | I overrule that. Go ahead. |
| [Simon]: | That's his lawyer, his criminal lawyer right here. So at some point, when the heat comes on, [Tanguy] is trying to distance himself away from any criminal activity. [Izen] shows up. . . . <br><br>. . . . <br><br>. . . . Mr. Tanguy—they sell an asset; and any moneys left over after satisfying the judgment to [Laux], you know where the excess money goes to? [Davis]. It's all just a big circle. So [Izen's] client, [Davis]—who he also represents [Tanguy]. This is all just trying to get the money back to [Davis] to complete this scam, and somehow [Laux] is supposed to be responsible for a decision that [Tanguy] has entered into. . . . |
| THE COURT: | Thank you. Okay. Are ready to call your first witness? |
| [Wojciechowski]: | Yes, Your Honor. I'm going to call [Laux]. |

> [Izen]: Your Honor, we have a matter we need to take up at the next break based on a comment.
>
> THE COURT: Next break?
>
> [Izen]: Yes.

Moreover, Simon, during his cross-examination of Izen, asked, "Were you counsel for Mr. Davis in the criminal trial?" And, after the trial court overruled Tanguy's objection to relevance, Izen replied, "Yes." Finally, Tanguy asserts that Simon, during his closing argument, "once more infer[red] that Izen and Tanguy were involved in criminal conduct along with Davis." In the portion of closing that Tanguy references in his Statement of Facts, however, Simon does not mention Izen. Rather, he characterizes Davis's and Tanguy's failures to keep the aircraft inspected as dangerous and therefore "[c]riminal."

Although Tanguy timely objected to Simon's assertion, made in his opening statement, that Izen was Davis's criminal defense lawyer, Tanguy did not object to Simon's statements "accus[ing] Izen of bringing this litigation on behalf of Tanguy for an improper purpose." And the record shows that it was not until later, after opening statements and Laux's testimony, that Tanguy first moved for a mistrial on the ground that Simon's opening statement constituted improper argument. And he then noted to the trial court that he only had a "duty to submit an instruction" for its "consideration to tell [the jury] to disregard" the improper comment. It was not until the next day that Tanguy submitted his "Renewed Motion for Mistrial

13

and, in the Alternative, Motion for Curative Instructions," in which he requested that the trial court instruct the jury to disregard the complained-of statements. After the trial court denied Tanguy's motion, Izen testified, and Tanguy did not request that the trial court instruct the jury to disregard the complained-of testimony.

Because Tanguy did not, at the time of the complained-of arguments and testimony, request that the trial court instruct the jury to disregard the remarks, he did not preserve error. *See Phillips*, 288 S.W.3d at 883. Thus, to prevail on appeal, he must show that the complained-of remarks were incurable. *See Peñalver*, 256 S.W.3d at 680.

To the extent that Tanguy complains that Simon, in his opening statement and cross-examination of Izen, identified Izen as Davis's "criminal lawyer," we note that the reference, in and of itself, does not constitute an attack on Izen's integrity. Further, the record shows that Simon had, prior to the complained-of statements, noted to the jury, without objection by Tanguy, that Davis had been convicted of three felony offenses of filing false income tax returns, and Simon published the judgments of conviction to the jury. And the trial court later admitted into evidence, without objection, the indictment accusing Davis of the offenses. An argument is not improper when direct evidence and inferences from the evidence support the argument. *See Reese*, 584 S.W.2d at 836–37.

14

In regard to Simon's argument that if Tanguy "sells an asset," "any moneys left over after satisfying the judgment to [Laux]" would go to Davis, the evidence shows that Tanguy purchased the aircraft from Davis, Tanguy still owed Davis's bankruptcy estate $1.2 million for the aircraft, and Laux had obtained a judgment against Davis. One could reasonably infer that if Tanguy were to sell the aircraft, Davis, or his bankruptcy estate, and Laux would have claims to the proceeds. Again, the evidence and inferences from the evidence support Simon's argument. *See id.* (holding defense counsel's argument plaintiff's counsel engaged in scheme with plaintiff and his doctors to increase plaintiff's medical expenses not improper because direct evidence and inferences supported argument).

Finally, in regard to Simon's comment that "[t]his is all just trying to get the money back to [Davis] to complete this scam" and Izen's role, we note that the comment, is, at best, ambiguous. Even if we were to conclude that this comment is improper, arguments alleging that opposing counsel engaged in wrongful conduct are not per se incurable. *Jones v. Republic Waste Servs.*, 236 S.W.3d 390, 402 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also Penalver*, 256 S.W.3d at 681 ("Not all personally critical comments concerning opposing counsel are incurable."). Indeed, courts have held that certain arguments alleging the existence of a conspiracy between a party and counsel were not incurable. *See Reese*, 584 S.W.2d at 840; *Clark v. Bres*, 217 S.W.3d 501, 511 (Tex. App.—Houston [14th

15

Dist.] 2006, pet. denied) (holding curable plaintiff's argument "impl[ying]" defendant and his counsel engaged in conspiracy).

Tanguy has not shown that the complained-of arguments and comments of Simon were incurable. *See Peñalver*, 256 S.W.3d at 680. Thus, he was required to object to the complained-of statements, timely request a curative instruction, and move for mistrial. *See Reese*, 584 S.W.2d at 839. Accordingly, we hold that Tanguy has failed to preserve his sixth and seventh issues for review. *See Jones*, 236 S.W.3d at 405.

We overrule Tanguy's sixth and seventh issues.

### Evidentiary Issues

In his eighth issue, Tanguy argues that the trial court erred in admitting into evidence "bankruptcy pleadings, orders, and opinions" pertaining to Davis because they were "irrelevant" and their introduction into evidence was "calculated to cause and did cause the rendition of an improper verdict."

An appellate brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). And an appellant must provide the Court with such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. *See* TEX. R. APP. P. 38.1(i); *Tesoro Petroleum Corp. v. Nabors Drilling*

16

*USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

In his argument under this point, Tanguy refers generally to "objections to such evidence," without identifying any particular objection, presenting any legal argument in support of his assertions that the trial court's rulings were in error, and analyzing any resulting harm. Accordingly, we hold that Tanguy has inadequately briefed this issue and, thus, he has waived it. *See* TEX. R. APP. P. 38.l(i); *Republic Underwriters, Ins. Co. v. Mex–Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004); *Howeth Invs., Inc. v. City of Hedwig Vill.*, 259 S.W.3d 877, 902 (Tex. App.— Houston [1st Dist.] 2008, pet. denied.) (declining to reach, for lack of adequate briefing, appellate challenge having insufficient analysis and lacking citation to authority).

We overrule Tanguy's eighth issue.

## Attorney's Fees

In his first and second issues, Tanguy argues that the trial court erred in denying him statutory attorney's fees on Laux's fraudulent-transfer claim. *See* TEX. BUS. & COM. CODE ANN. § 24.013. He asserts that the "jury heard all of the arguments" and the trial court "held a post-trial hearing at which [he] presented further evidence supporting his claim that the $100,000.00 attorney's fee award recommended by the jury was 'equitable and just.'"

17

TUFTA provides that a "court may award costs and reasonable attorney's fees as are equitable and just." TEX. BUS. & COM. CODE ANN. § 24.013. If a statute provides that a trial court "may award" attorney's fees, an award of attorney's fees is not dependent upon a party prevailing in the case. *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996). Such statutes entrust awards of attorney's fees to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact for a jury's determination, and to the additional requirement that fees be equitable and just, which are matters of law addressed to the trial court's discretion. *See Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex. 1998) (considering similar language in other statutes).

In reviewing a trial court's award of attorney's fees, we determine whether the trial court abused its discretion by awarding fees without sufficient evidence that the fees were reasonable and necessary, or by awarding fees that were inequitable or unjust. *Id.* at 21. Unreasonable fees may not be awarded, even if a trial court believes them just; however, a trial court may conclude that it is not equitable or just to award reasonable and necessary fees. *Id.* Trial courts have the discretion not only to award attorney fees, but also to award less than any amount determined by a jury to be reasonable and necessary. *Id.*; *see Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 161–62 (Tex. 2004). Although a trial court

18

may submit a question to a jury on the amount of reasonable and necessary attorney's fees, it retains the authority to award or deny those fees. *Hansen v. Acad. Corp.*, 961 S.W.2d 329, 333–34 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

Here, the trial court granted Tanguy summary judgment on Laux's fraudulent-transfer claim, and Tanguy sought attorney's fees. *See* TEX. BUS. & COM. CODE ANN. § 24.013. The jury answered that "the reasonable fee for the necessary services of Tanguy's attorneys" was $100,000. Laux, in his motion for judgment, challenged the jury's finding on the grounds that "the jury rejected each and every claim for liability" Tanguy proffered and an award of attorney's fees under TUFTA is a question for trial courts and not for juries. Tanguy argues that the evidence establishes that he is entitled to attorney's fees as a matter of law because Laux did not present "controverting proof . . . on the equitable and just fee award issue."

The trial court may have concluded that, in light of the record, it would not have been equitable or just to award Tanguy reasonable and necessary attorney's fees. *See Bocquet*, 972 S.W.2d at 21 (noting "court may conclude that it is not equitable or just to award even reasonable and necessary fees"). Nothing in the record suggests that the trial court abused its discretion in not awarding Tanguy his attorney's fees on Laux's fraudulent-transfer claim. *See Guinn Invs., Inc.*, 148

19

S.W.3d at 163 (noting trial court had discretion not to award attorney's fees jury found reasonable and necessary). Although the trial court submitted a question to the jury on the amount of reasonable and necessary attorney fees, it retained the sole authority to award or deny the fees. *See Barshop*, 925 S.W.2d at 637; *Hansen*, 961 S.W.2d at 333–34.

We overrule Tanguy's first and second issues.

## Striking Claims

In his third issue, Tanguy argues that the trial court erred in striking his claims against the Laux/Davis Partnership and Laux in his capacity as general partner because his "counterclaims were properly served on Laux in both his individual as well as his partnership capacities" and the trial court "ignored Laux's prior appearances on [the] counterclaim[s]."

We review a trial court's striking of pleadings for an abuse of discretion. *Hardin v. Hardin*, 597 S.W.2d 347, 349–50 (Tex. 1980); *see Strange v. HRsmart, Inc.*, 400 S.W.3d 125, 131 (Tex. App.—Dallas 2013, no pet.). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Tanguy initially brought his counterclaims against Laux only in his individual capacity, and it is undisputed that Tanguy served him with process. In

20

his first amended counterclaim, Tanguy asserted claims against Laux in his individual capacity, Laux in his capacity as a business partner of Davis, and the Laux/Davis Partnership. In his second amended counterclaim, Tanguy abandoned his claims against the Laux/Davis Partnership and Laux in his capacity as general partner. In his third amended counterclaim, Tanguy reasserted his claims against Laux, both in his individual capacity and as general partner, and against the Laux/Davis Partnership. Laux then moved to strike Tanguy's claims brought against the Laux/Davis Partnership and him in his capacity as general partner, asserting that Tanguy had amended his pleadings on the eve of trial, after the deadline stated in the trial court's docket control order, and without leave of court. After the trial court granted a continuance, it denied Laux's motion to strike.

Laux then filed special exceptions, asserting that Tanguy had failed to serve the Laux/Davis Partnership or him in his capacity as general partner. After a hearing, the trial court struck Tanguy's claims against the Laux/Davis Partnership and Laux as general partner, as recorded in the following exchange:

> THE COURT: Good morning, everybody. I have read the briefing on this. All of the cases—good morning. All of the cases that you've cited require that an appearance be—have been made. And I think that is the whole issue here is you're saying there's not been an appearance by the partnership.
>
> [Laux]: Well, I'm saying there has been citation. In all the cases that I've read, none of them have held

21

without a citation. And then there's this waiver would be being not waived.

[Tanguy]: And I'm exactly opposite. I state that once they get a paper, by Rule 21A, served on them that has the partnership in it, then they come here and they try to quash any kind of service on that. They made an appearance.

THE COURT: I'm going to overrule your motion. Now we're now at motion in limine stage, which is I think how this all generated. I think we have a suit between two individuals. So if I'm wrong, sorry about that. Take it up. Fix it. What else we got to do?

[Tanguy]: If I understand your ruling, you're saying that there's not going to be any evidence on the partnership?

THE COURT: I think you can talk about the partnership all day long. There's not going to be any issue on partnership.

The purpose of special exceptions is to compel clarification of a pleading when the pleading fails to plead a cause of action or is not clear or sufficiently specific. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). And, generally, when a trial court sustains special exceptions, it must give the pleader an opportunity to amend the pleading, unless the pleading defect is of a type that amendment cannot cure. *See id*.

Here, Laux filed special exceptions to complain that he was not served as a partner. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.022 (Vernon 2008). Section 17.022 provides that "[c]itation served on one member of a partnership authorizes

22

a judgment against the partnership and the partner actually served." *Id.*; *Kao Holdings, L.P. v. Young*, 261 S.W.3d 60, 62 (Tex. 2008). Thus, it simply allows judgment to be taken against a partnership after service on a single partner.

Challenges to service of process should be brought through a motion to quash. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985). The only remedy for improper service is additional time to answer. TEX. R. CIV. P. 122; *Kawasaki*, 699 S.W.2d at 202.

Further, the necessity of service of a counterclaim on a party who has not made an appearance is waived by that party's appearance after the counterclaim has been filed. *Hous. Crushed Concrete, Inc. v. Concrete Recycling Corp.*, 879 S.W.2d 258, 260 (Tex. App.—Houston [14th Dist.] 1994, no pet.). An appearance, however unintentional, constitutes a waiver of service. *Id.*

Accordingly, we hold that the trial court erred in striking Tanguy's claims against the Laux/Davis Partnership and Laux in his capacity as partner.

We sustain Tanguy's third issue.

## Conclusion

We reverse the portion of the trial court's judgment dismissing Tanguy's claims against the Laux/Davis Partnership and Laux in his capacity as general partner, and we remand these claims to the trial court for further proceedings not inconsistent with this opinion. In all other respects, we affirm the judgment of the trial court. We dismiss all pending motions as moot.

Terry Jennings
Justice

Panel consists of Justices Jennings, Massengale, and Lloyd.