In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-20-00161-CV

JPMORGAN CHASE BANK, N.A., Appellant

V.

THOMAS N. CAMPBELL, CHRISTY W. KOLVA, FOSTER
MANAGEMENT, L.L.C., FOSTER TIMBER, LTD, NEIL F. CAMPBELL
JR., ROBIN S. ROUSE, TERRILL A. SCATENA, AND SABRINA ROUSE,
Appellees

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 18-12-15871-CV

**MEMORANDUM OPINION**

In this interlocutory appeal, JPMorgan Chase Bank, N.A., appeals the trial court's denial of its special appearance.[1] In two issues, JPMorgan argues that its appearance as a "nominal defendant" in a lawsuit in Texas did not waive its right to challenge the court's exercise of personal jurisdiction over JPMorgan concerning a

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7).

1

"new and separate claim" asserted in an amended petition, where the evidence does not otherwise support personal jurisdiction over JPMorgan in a Texas court. For the following reasons, we reverse the trial court's order and remand to the trial court for further proceedings in compliance with this opinion.

## I. Background

Upon her father's death, Letitia Foster Campbell inherited a 50% interest in timber acreage located in Montgomery, San Jacinto, Polk, Trinity, and Walker Counties. Letitia later transferred her interest into a trust entitled the Letitia Foster Campbell 46 Trust (LFC 46 Trust), created by Declaration of Trust and Agreement filed in California in 1946. Letitia's son, Neil, Sr. was named as Trustee. After the death of Letitia's children, the beneficial interest in the trust was allocated among Letitia's grandchildren as follows: 25% for Robin S. Rouse, 25% for Terrill A. Scatena, 16.66% for Neil Campbell, Jr., 16.66% for Christy Kolva, and 16.66% for Thomas Campbell. The Trust will reportedly terminate upon the deaths of Letitia's grandchildren,[2] and the presumptive remainder beneficiaries of the trust are Letitia's great-grandchildren, Ben Campbell, Ashley Gates, Isabelle Campbell, Sabrina Rouse, Morgan Peterson, and Ryan Peterson.[3] JPMorgan is the current Trustee of the LFC 46 Trust.

---

[2] Thomas Campbell was not a measuring life under the Trust.
[3] Robin Rouse, Sabrina S. Rouse, and Terrill Scatena filed an amicus brief stating they are not parties to this appeal.

A California state court order modified the Trust to create business entities designed to allow the family to manage the timber holdings through closely held business entities, rather than having a corporate trust manage these timber holdings. A Texas limited partnership, Foster Timber, and a Texas limited liability company, Foster Management, were formed to own and manage the timberlands. Under this arrangement, the Trustee would contribute Trust timber property to the limited partnership, which would be owned 1% by Foster Management as general partner and 99% by the Trustee of the Trust as a limited partner of the LLC. The five grandchildren hold membership interests in Foster Management, L.L.C. Per the partnership agreement, Foster Management has "full, exclusive, and complete discretion in the management and control of Partnership affairs and business." The LFC 46 Trust, is the sole limited partner of Foster Management and, "shall not take any part in the management or control of the business[.]"

In 2018, Christy Kolva and Thomas Campbell sent a dispute notice to Robin, Terrill, and Neil, and sought, among other things, the dissolution of Foster Management, L.L.C. due to "[g]eneral dysfunction, [d]issension, and [d]eadlock[.]" This dissolution was conducted under the ADR of the partnership agreement. In December 2018, Thomas, Christy, Foster Management, and Foster Timber filed suit against Neil, Robin, Terrill, Sabrina, and JPMorgan, Trustee as a "Nominal Defendant" asking for declaratory relief and injunctive relief from the court pending

3

the ADR process. JPMorgan filed a "Nominal Defendant's Answer[.]" In April 2019, the trial court stayed the case and ordered arbitration. In August 2019, JPMorgan then filed a Petition for Declaratory Judgment arguing that it, as a limited partner, should not be required to participate in the arbitration. Plaintiffs Thomas, Christy, Foster Timber and Foster Management disagreed and asked the trial court to deny JPMorgan's request. They also asked that the trial court order JPMorgan to comply with the arbitration provisions. Subsequently, JPMorgan sought an emergency protective order with the trial court.

The Plaintiffs then filed the first of two counterclaims against JPMorgan. In the first counterclaim, the Plaintiffs filed a first amended answering statement, motion to compel compliance with arbitral orders . . . and counterclaims against JPMorgan Chase Bank, N.A." In its counterclaims, the Plaintiffs argued that JPMorgan's attempts to avoid the arbitration breached its fiduciary duty to the Trust.[4] In March of 2020, Plaintiffs filed an application with the trial court to confirm the arbitration award and included another counterclaim against JPMorgan seeking to modify and reform the LFC 46 Trust. That counterclaim is the subject of this appeal. In response to the amended counterclaim, JPMorgan filed a special appearance contesting the trial court's jurisdiction to consider the subject of trust

---

[4] The trial court later dismissed these claims after JPMorgan filed a Motion to Dismiss pursuant to the Texas Citizens Participation Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003. Neither party has appealed this order.

4

modification. On June 3, 2020, the trial court held a hearing regarding JPMorgan's special appearance and plea to the jurisdiction.[5] After the hearing, the trial court denied JPMorgan's special appearance finding that

> J.P. Morgan Chase generally appeared in this Court on January 9, 2019 via a filed general denial, as well as by filing its own Petition for Declaratory Judgment on August 1, 2019. As a result, the Court finds that J.P. Morgan Chase waived its Special Appearance.

In a separate order, the trial court granted JPMorgan's plea to the jurisdiction with regard to these same claims. JPMorgan then timely appealed the trial court's order denying its special appearance. Foster also timely filed a cross appeal of the trial court's "Order on [JPMorgan] Chase's Special Appearance[]" ("June 4th Order"), being the same order from which JPMorgan appeals herein.[6]

## II. Personal Jurisdiction

JPMorgan challenges the trial court's ruling that it waived its right to challenge the trial court's exercise of personal jurisdiction over JPMorgan with regard to a new and independent counterclaim filed in March 2020 by an amended petition, after JPMorgan had entered a general appearance in the underlying lawsuit as a nominal defendant and filed a declaratory judgment action seeking affirmative

---

[5] The trial court heard jointly the special appearances filed by JPMorgan and Defendants Neil F. Campbell Jr., Robin S. Rouse, Terrill A. Scatena, and Sabrina Rouse. Only the interlocutory appeal of the trial court's order denying JPMorgan's special appearance is before the Court.

[6] We refer to the appellees collectively as "Foster."

relief in the lawsuit. JPMorgan further contends the amended pleadings and evidence do not support the trial court's exercise of personal jurisdiction over JPMorgan regarding the new and independent claim.

## A. Standard of Review

Whether a court has personal jurisdiction over a defendant is a question of law we review de novo. *See Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010). When, as here, a trial court does not issue findings of fact and conclusions of law in support of its ruling, we presume the trial court resolved all disputed facts in a manner that favors its ruling. *See id*. at 871–72; *Retamco Operating, Inc., v. Republic Drilling Co*., 278 S.W.3d 333, 337 (Tex. 2009); *see also BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex. 2002).

## B. Waiver

First, we will address whether JPMorgan, having made a general appearance in the lawsuit and by filing the declaratory judgment action, waived its right to challenge personal jurisdiction by special appearance after Plaintiffs filed a counterclaim asserting a "new and independent" claim. In denying JPMorgan's special appearance, the trial court found that JPMorgan had waived its right to contest personal jurisdiction by special appearance when it generally appeared in the underlying lawsuit and by seeking declaratory relief.

Rule 120a allows a party to file a special appearance in any severable action of a lawsuit. *See* Tex. R Civ. P. 120a ("A special appearance may be made as to an entire proceeding or as to any severable claim involved therein.").

> A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues.

*F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007) (citation omitted).

In response to Plaintiffs' counterclaim for the trust modification, JPMorgan filed a special appearance contesting the trial court's exercise of personal jurisdiction over it regarding that specific claim. This was filed before any other pleading after Foster filed the trust modification counterclaim. JPMorgan argues that although it sought declaratory relief under the initial lawsuit, the trust modification is a severable action under 120a, and therefore, it timely filed its special appearance. *See* Tex. R. Civ. P. 120a. Foster expressly advocates for and admits in Plaintiffs' Rule 41 Motion to Sever Application to Confirm Final Arbitration Award filed in this cause that the Counterclaim for Trust Modification is a severable action stating "[p]laintiffs' [a]pplication to confirm the Final Award under the Texas Arbitration Act is also separate and distinct from their Counterclaim for Trust Modification under the Texas Property Code . . . [p]laintiffs' claim for trust modification was not

7

arbitrated but rather for [the trial court] to decide in the first instance." *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2002) (citations omitted) (stating a judicial admission must be "'clear, deliberate, and unequivocal[,] occurs when an assertion of fact is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary, [and] relieves [an] adversary from making proof of the fact admitted but also bars the party himself from disputing it.'"). Additionally, actions of a limited partner and the administration of a trust are "distinct concepts[,]" supporting the severability of the claims under Rule 120a. *Gonzales v. De Leon*, No. 04-14-00751-CV, 2015 WL 5037396, at *7 (Tex. App.—San Antonio Aug. 26, 2015, pet. dism'd) (mem. op.) (explaining that "there is no evidence to establish that the administration of the . . . Trust affects . . . the Alexander the Limited Partnerships"); *see also* Tex. R. Civ. P. 120a. Therefore, we hold that the trust modification claim is a severable action, and that JPMorgan did not waive its challenge to the trial court's exercise of personal jurisdiction over it by appearing in and seeking declaratory relief in the underlying arbitration suit.

## C. Specific Jurisdiction

Because the parties do not challenge general jurisdiction, we only address the question of specific jurisdiction.[7]

First, JPMorgan contends that Foster did not plead sufficient facts as to invoke long-arm jurisdiction under Texas Rule of Civil Procedure 120a. *See* Tex. R. Civ. P. 120a; *see also Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 660 (Tex. 2010). (in reviewing long-arm jurisdiction "the requirements of due process must be upheld, particularly the connection between the defendant, the forum, and the litigation in the specific jurisdiction context.").

A plaintiff has the initial burden to plead sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013); *Kelly*, 301 S.W.3d at 658. If the plaintiff pleads sufficient jurisdictional allegations, the nonresident defendant filing a special appearance then has the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Moncrief Oil*, 414 S.W.3d at 149; *BMC Software,* 83 S.W.3d at 793. Once the defendant produces evidence negating jurisdiction, the burden shifts to the plaintiff to establish the court's jurisdiction over the defendant. *Kelly*, 301 S.W.3d at 658–59. If, however, a plaintiff fails to plead

---

[7] In its brief, Foster does not argue that JPMorgan is subject to personal jurisdiction under general jurisdiction, but rather argues that JPMorgan purposely availed itself to Texas by its activities with the Trust.

sufficient facts to bring the defendant within the long-arm statute, the defendant must only prove it does not live in Texas to negate jurisdiction. *Id.*; *Booth v. Kontomitras*, 485 S.W.3d 461, 476 (Tex. App.—Beaumont 2016, no pet.). In determining whether the plaintiff met its initial burden, we may consider the plaintiff's original pleadings as well as its response to the defendant's special appearance. *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

In its trust modification counterclaim, Foster alleges personal jurisdiction facts regarding the grandchildren and great grandchildren of Letitia but fails to include JPMorgan in those allegations. Rather, the allegations against JPMorgan pertain to venue.

19. Venue is also proper in Montgomery County because JPMorgan fixed venue with regard to trust issues in its Petition for Declaratory Judgment, filed on August 1, 2019, to which Plaintiffs' request for trust modification is a counterclaim. TEX. CIV. PRAC. & REM. CODE § 15.062 ("Venue of the main action shall establish venue of a counterclaim ….").

20. Venue is also proper in this Court because this Court previously compelled the parties to arbitrate the suit, and stayed the action pending the issuance of a Final Award, which has now been issued. As set out below, Plaintiffs seek the confirmation of said Final Award, and the conversion of the Final Award into a final judgment. Further, as set out below, Plaintiffs seek a modification of the LFC46 in order to give effect to, and implement, the Final Award.

21. Through their previous acts and omissions, all Defendants have previously agreed and consented to this Court's proper venue of this matter. For instance, the Scatena Defendants previously consented to

10

this Court's proper venue over a temporary injunction hearing that took place in January 2019, and affirmatively sought various forms of relief in this Court, including an order compelling arbitration and staying the case pending arbitration. For its part, Defendant JPMorgan entered into a binding Rule 11 Agreement, filed of record with the Court, in which JPMorgan agreed to comply with, and not to interfere with, the alternative dispute resolution process set out in Article 13 of the Regulations of Foster Management. JPMorgan even agreed to a modification of that ADR Process, including an informal mediation conducted through outside counsel, in the first instance. Further, Defendant JPMorgan has sought relief in this Court, including through its Petition for Declaratory Judgment dated August 1, 2019, which expressly fixed venue in this Court. JPMorgan also appeared through counsel at two separate hearings in this Court without any objection to venue.

In support of its counterclaim, Foster alleges jurisdiction to modify the LFC 46 Trust exists under Texas Property Code section 112.054.[8] *See generally* Tex. Prop. Code Ann. § 112.054 (allowing for court to modify or terminate trust if its purposes have become impossible due to unanticipated circumstances by settlor). Foster states that this modification is necessary to "further the Trust's purposes because of circumstances not known to or anticipated by the settlor under Section 112.054(2)." In the same petition, Foster identifies that Foster Timber owns thousands of acres of timber in Texas, Foster Management owns 1% of Foster Timber and is comprised of the Letitia's five grandchildren, and that JPMorgan is the LFC 46 Trustee, and the

---

[8] "Trusts are governed by Texas Trust Code, found within the Texas Property Code[,] and [t]hat code includes a specific provision for the judicial modification of a trust." *In re Troy S. Poe Tr.*, 591 S.W.3d 168, 176 (Tex. App.—El Paso 2019, pet. filed) (citing Tex. Prop. Code Ann. § 112.054).

11

Trust owns 99% of Foster Timber. Foster alleges that JPMorgan advises Foster and cited to the irreconcilable differences between the grandchildren in Foster Management leading to JPMorgan recommending the dissolution of the LFC 46 Trust and to let each family branch manage their ownership of the timberland. Ultimately, the parties could not agree on the dissolution of the timberlands and Trust which led to arbitration and this litigation. The arbitrator ordered the dissolution of Foster Timber and Foster Management. Foster alleges that JPMorgan has made it clear it will liquidate the assets in the Foster entities then invest those proceeds in marketable securities the JPMorgan will solely control. Foster further alleges such liquidation of Trust assets would risk incurring large tax liabilities. More simply, when the LFC 46 Trust was created and later modified, it was unanticipated that the grandchildren as Foster Management would be unable to agree and properly manage the timberlands, necessitating the sale of the timberlands per arbitration. They further allege that modification of the trust is necessary to avoid "waste of Trust resources" by JPMorgan's sale of the timber.

Foster's argument regarding venue and facts about attempting to circumvent waste to the Trust are insufficient to invoke long-arm jurisdiction. In fact, Foster's petition clearly states that JPMorgan "has repeatedly indicated that it does not manage timber and will not hold timber assets in the LFC 46 Trust." None of these statements demonstrate that JPMorgan "does business" in Texas as required by the

12

long-arm statute. *See Energy Search Co., Inc. v. RLI Ins. Co.,* No. 14-18-00747-CV, 2019 WL 6711427, at *2 (Tex. App.—Houston [14th Dist.] Dec. 10, 2019, no pet.) (mem. op.) (explaining that none of the pleaded facts demonstrated the nonresident defendant did business in Texas); *see also Kelly*, 301 S.W.3d at 660 (plaintiff failed to establish long-arm jurisdiction under 120a because the pleaded facts failed to demonstrate the defendant committed torts in Texas). But our review of Foster's later filed response to JPMorgan's special appearance elaborates JPMorgan's contacts with Texas. *See Munz v. Schreiber*, No. 14-17-00687-CV, 2019 WL 1768590, at *5 n.4 (Tex. App.—Houston [14th Dist.] Apr. 23, 2019, no pet.) (mem. op.) (considering plaintiff's response to a special appearance in addition to pleadings in determining bases for personal jurisdiction). In its response, Foster argues that JPMorgan has benefitted from the sale of timber located in Texas as a trustee. JPMorgan solicited business from the beneficiaries stating it would "maximize the value of the Texas property," and holds the "responsibilities of an owner[.]" Foster states that JPMorgan participated in business meetings of Foster Management and sent representatives to Texas on "nearly half a dozen occasions[,]" meeting with Christy in her Conroe home. We conclude that Foster's pleadings, including its response to the special appearance, allege sufficient facts that required JPMorgan to file a sworn denial or its equivalent responding to its allegations that JPMorgan

13

"does business" in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1); Tex. R. Civ. P. 120a(1).

While we conclude that Foster alleges facts that overcome the first prong of the analysis, that is not necessarily enough to satisfy due process as required under the long-arm statute. "Asserting personal jurisdiction comports with due process when (1) the nonresident defendant has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice." *Moncrief*, 414 S.W.3d at 149–50 (citations omitted).

Recently the United States Supreme Court addressed specific jurisdiction.

Specific jurisdiction is different [than general jurisdiction]: It covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The defendant, we have said, must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." They must show that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, "must arise out of or relate to the defendant's contacts" with the forum. Or put just a bit differently, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, *1024–25 (2021) (citations omitted). For a Texas court to exercise specific jurisdiction, the

14

nonresident defendant must have made minimum contacts with Texas by purposefully availing itself of the privilege of conducting business here, and its liability must have arisen from or be related to those contacts. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 576 (Tex. 2007). "[T]here must be a substantial connection between those contacts and the operative facts of the litigation." *Id*. at 585. A "purposeful availment" inquiry involves three parts: (1) consideration of the defendant's contacts with the forum, but "not the unilateral activity of another party or a third person[;]" (2) "the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated[;]" and (3) the defendant must seek a benefit, advantage, or profit by availing itself of the jurisdiction. *Id*. at 575 (citations omitted). "In contrast, a defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there." *Id*. (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).

Along with the allegations in the counterclaim pleaded by Foster, the trial court held a hearing regarding JPMorgan's special appearance in June 2020. Sabrina Rouse, daughter of beneficiary Robin Rouse, testified that she is currently the Secretary of Foster Management and has been since 2018. Sabrina testified that when the LFC 46 Trust was created, Letitia lived in California, and all the beneficiaries lived in California at the time of the modification. Sabrina stated that

15

when the LFC 46 Trust was modified in the 1990's, the modification was ordered through a California court. The Trust has never been administered in the State of Texas. According to Sabrina, the money from Foster Timbers "goes 99 percent to the LFC 46 Trust and 1 percent to Foster Management[.]" JPMorgan then distributes the money to the beneficiaries of the Trust in compliance with its terms. Sabrina testified that JPMorgan as the Trustee has distributed money from the Trust to her mother. Sabrina confirmed that Foster Management has staff in Texas, Georgia, California, and Arizona, and that all timber harvested by Foster Timber comes from Texas. She explained that "historically" Foster Management's foresters have been located in Conroe. Sabrina also clarified that although the trust has Texas trees as assets, it has other assets including stocks and marketable securities held in companies throughout the world and not exclusively in Texas. She testified that once the funds are received by JPMorgan as the Trustee in Illinois, neither she nor her mother, as a beneficiary of the LFC 46 Trust, have any control over the activities of the LFC 46 Trust, nor to her knowledge does the administration of the Trust "have anything . . . to do with the state of Texas[.]"

Christy Kolva testified she is one of the Plaintiffs and lives in Montgomery County, Texas. She is Letitia Foster's grandchild and a beneficiary of the LFC 46 Trust. For over 20 years, she served as Treasurer of Foster Management. Documents were admitted at trial that showed a handwritten notation titled "Texas Trust" with

16

the date April 7, 1950 at the top of the LFC 46 Trust, which Christy identified as her grandfather, Letitia's husband's handwriting. She also testified that the document with the handwritten notation titled "Texas Trust" was filed and recorded in Harris County in 1952. Christy stated that the LFC 46 Trust has connections to Texas because "[a]ll the assets, with the exception of a little over a million in financial assets, are in the state of Texas." She stated the family "always talked about the Texas property, Texas timberlands[,]" and that her grandmother and grandfather had no connection to Illinois, where the Trust is currently administered. According to Christy, before the Trust was modified in the 1990's, JPMorgan solicited her father, the Trustee at that time, and sought to be named as Successor Trustee. A JPMorgan representative sent correspondence to her father offering specific assistance regarding the Trust modification in the 1990's. Christy testified that the 1990's Trust modification resulted in the formation of Foster Timber and Foster Management to help control the activities of the successor corporate Trustee once her father stepped down. A California Court modified the Trust to make two Texas entities for the Texas timber and gave Foster Management a 1 percent interest and LFC 46 Trust a 99 percent interest in Foster Timber. The modification required the Trustee to give "Trust timber property to the [limited partnership] sufficient to entitle him in his fiduciary capacity to a 99 percent interest in the [limited partnership]." Christy testified that the principal offices of Foster Management are in Conroe, Montgomery

17

County, Texas, and Foster Timber and Foster Management are organized under Texas laws. According to Christy, from a "practical standpoint" the revenue from the timber operations flows from the partnership to the Trust, then to the beneficiaries.

JPMorgan argues that it did not purposely avail itself in Texas because the Trust was not created or modified in Texas, it administers the Trust in Illinois and never in Texas, the beneficiaries live in California, and one beneficiary's move to Texas does not demonstrate that it is doing business in Texas. JPMorgan also contends that although the timber is located in Texas, JPMorgan does not hold legal title to the land, but that "an interest in a partnership for the benefit of third parties does not constitute 'purposeful activity.'" We agree.

"A nonresident who has purposefully availed himself of the privileges and benefits of conducting business in the state has sufficient contacts with the state to confer personal jurisdiction." *Loya v. Taylor*, No. 01-14-01014-CV, 2016 WL 6962312, at \*2 (Tex. App.—Houston [1st Dist.] Nov. 29, 2016, pet. denied) (mem. op.) (citation omitted). In *Loya*, the 1st Court of Appeals held that there were not sufficient minimum contacts to demonstrate that Texas had specific jurisdiction over a foreign trustee. *See id.* at \*8. The court noted that although the plaintiff alleged the trustee engaged in multiple contacts in Texas, including executing contracts and being a signatory to a shareholder agreement, the court stated it was not "concerned

18

with the quantity of the contacts; instead, we are concerned with the nature and quality of those contacts." *Id*. The court found that the trustee was merely passive in its presence, its "participation" was passive, and it existed for the benefit of the shareholders and did not conduct business in Texas. *See id*. Similarly, JPMorgan is a trustee with a passive role. Testimony showed that although JPMorgan owns 99% of Foster Timber, the operations of Foster Management and the decisions regarding Foster Timber remained with the five grandchildren. Exhibits admitted during the hearing show JPMorgan solicited Christy's father to become successor trustee, but our review of the exhibits does not demonstrate that JPMorgan was attempting to conduct business in Texas. In each letter, JPMorgan outlines its duties and limits its activities stating that it would not participate in the day-to-day operational activities and that it was going to act as a "company director, acting in a consulting or review role rather than initiating or directly conducting such negotiations." And while there may have been contacts by JPMorgan representatives in Texas since the 1990's Trust modification, these actions do not demonstrate that JPMorgan was doing business in Texas to show purposeful availment. *See RE Family Tr. v. Conestoga Settlement Tr.*, No. 04-12-00325-CV, 2012 WL 6030266, at \*3 (Tex. App.—San Antonio Dec. 5, 2012, no pet.) (mem. op.) (our focus is not on the number of contacts a defendant has with Texas, but rather the quality of contacts).

Testimony regarding Christy's residency in Texas also does not sway our opinion. As *Loya* noted, the presence of a beneficiary in the state does not in itself confer jurisdiction over a trustee. *See* 2016 WL 6962312, at *8. Significantly, Christy testified that when the Trust was created, no beneficiary lived in Texas, and she only moved to Texas in 2014. *See Lisitsa v. Flit*, 419 S.W.3d 672, 681 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (explaining in a jurisdictional analysis it is irrelevant that the plaintiff moved to Texas in the midst of a preexisting relationship between the parties).

Foster argues that the timber is in Texas and that subjects JPMorgan to personal jurisdiction in Texas. In its brief to the Court, Foster argues that "a nonresident holding Texas-real-property interests is subject to Texas jurisdiction where that nonresident 'enter[s] into a business relationship to share in the profits and losses associated with' Texas real estate." The fact that the timber, being the majority of the Trust corpus, is located in Texas does not in itself demonstrate purposeful availment. In *Alexander v. Marshall*, the 14th Court of Appeals held that Texas has specific jurisdiction over a trust when the trust was settled in Texas, all the trust's corpus was located in Texas, and the trust was run administratively in Texas. No. 14-18-00425-CV, 2021 WL 970760, at *6 (Tex. App.—Houston [14th Dist.] Mar. 16, 2021, no pet.) (mem. op.). Moreover, the former trustee was a Texas resident and appointed the new trustees in Texas. *See id*. These actions, according to

20

our sister court, are "additional facts [that] support a conclusion that the co-trustees have reached out beyond their state and created continuing relationships and obligations with citizens of another state." *Id.* The record before us is distinguishable. While a portion of the Trust corpus in the form of real property is located in Texas, as well as the administrative offices of Foster Timber, the Trust is not involved in Foster Timber's operation and does not perform its administrative functions in Texas. While Foster points to JPMorgan's contacts in Texas, Christy testified that Paul Cress, the current administrator of the Trust for JPMorgan, and other JPMorgan points of contact for LFC 46 Trust distributions, were never located in Texas. Although Christy testified that she had regular contact with JPMorgan in Texas, her testimony did not show that such contacts were for the Trust's administration. Additionally, any evidence presented merely identifying the LFC 46 Trust as a "Texas Trust" as dictated by the handwritten notation at the top of the Trust document and evidence it was filed in Harris County in the 1950's, does not overcome testimony from both sides that: (1) Letitia created this Trust in California; (2) while she resided in California; and (3) the 1990's Trust modification occurred in California by agreement of all the beneficiaries who all lived in California when JPMorgan became Trustee.

Finally, Foster's argument that JPMorgan benefitted from the sale of the timber because it was paid from the funds from timber sales also lacks merit. *See*

21

*Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005) (internal quotations omitted) ("[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State."); *GJP, Inc., v. Ghosh*, 251 S.W.3d 854, 869 (Tex. App.—Austin 2008, no pet.) ("The bare fact that a defendant receives some benefit, advantage, or profit from Texas does not necessarily mean that it has purposefully availed itself of the state."). Based on the record before us, we cannot say that JPMorgan acquired a "benefit, advantage, or profit" by availing itself of the forum. *Moncrief*, 414 S.W.3d at 154. The Texas Supreme Court explained this is "implied consent" and a nonresident consents to the jurisdiction by "invoking the benefits and protections of a forum's laws." *Id*. The evidence does not demonstrate JPMorgan's passive presence as the Trustee invoked the "benefits or protections" of Texas law. The Trust was not modified in Texas, the majority of beneficiaries do not live in Texas, the Trustee does not maintain its place of business in Texas, the Trust is not administered in Texas, nor does the Trust physically own the timberlands in Texas. Further, while evidence demonstrated that JPMorgan owns a 99% partnership share in Foster Timber, it expressly has no role in the day-to-day management of that partnership, as it is run by Foster Management, which is comprised of family members. Additionally, there are other diversified assets that comprise the Trust corpus, and its existence is not solely dependent on

22

timber in Texas. *Compare to Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 665–66 (Tex. 1987) (The Texas Supreme Court has held there was personal jurisdiction over nonresidents with no physical ties to Texas, because joint venture of the parties "sole purpose of building a hotel in Texas, and the elevator contract is related directly to the hotel enterprise," and it was not unreasonable for the parties to anticipate being hailed into court in Texas).

We conclude that the trial court erred in denying JPMorgan's Special Appearance because the counterclaimants failed to meet their burden to establish that the Texas court had personal jurisdiction over JPMorgan with regard to the trust modification counterclaim.[9]

### III. Conclusion

Having sustained JPMorgan's first issue regarding personal jurisdiction, we reverse the order of the trial court finding that JPMorgan waived personal jurisdiction and render that the trial court may not exercise personal jurisdiction over JPMorgan with regard to Foster's counterclaim for trust modification.[10]

---

[9] As we have determined that JPMorgan does not have sufficient minimum contacts with Texas, we need not address whether those contacts "compl[y] with traditional notions of fair play and substantial justice." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149–50 (Tex. 2013) (citations omitted).

[10] Foster directs this Court's attention to appellate rule 29.6 allowing a court to consider "[w]hile an appeal from an interlocutory order is pending, on a party's motion or on the appellate court's own initiative, the appellate court may review the following: [] further appealable interlocutory order concerning the same subject matter; and [] any interlocutory order that interferes with or impairs the effectiveness

23

REVERSED AND REMANDED.

_____
CHARLES KREGER
Justice

Submitted on March 16, 2021
Opinion Delivered June 24, 2021

Before Kreger, Horton, and Johnson, JJ.

_____

of the relief sought or that may be granted on appeal." Tex. R. App. P. 29.6(a). While this Court recognizes its ability to review other orders under this rule, the order granting JPMorgan's plea to the jurisdiction is not an appealable interlocutory order under subsection (a) and Foster has not directed this court's attention as to why the order granting the plea to the jurisdiction "interferes with or impairs the effectiveness of the relief sought or that may be granted on appeal[]" under subsection (2). The trial court's order granting JPMorgan's plea to the jurisdiction does not interfere with our review of JPMorgan's personal jurisdiction. *See Trenz v. Peter Paul Petroleum Co.*, 388 S.W.3d 796, 805–07 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (A court of appeals jurisdiction does not extend to subject matter jurisdiction review with an interlocutory challenge under section 51.014(a)(7) of the Texas Civil Practice and Remedies Code absent an expressly enumerated grant of interlocutory jurisdiction.); *see also Tanguy v. Laux,* 259 S.W.3d 851, 855 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citations omitted) (noting it has jurisdiction to consider another interlocutory order "because it is a *further appealable* interlocutory order that concerns the same subject matter.") (emphasis added); *see also Dombart v. Madla*, No. 04-15-00605-CV, 2016 WL 1039106, at *2 (Tex. App.—San Antonio Mar. 16, 2016, no pet.) (mem. op.) (declining to review an interlocutory appeal under rule 29.6 because the trial court's order does not interfere with the appellate court's ability to review the relief sought); *Adams v. Harris Cty.*, No. 04-15-00287-CV, 2015 WL 8392426, at *4 (Tex. App.—San Antonio Dec. 9, 2015, no pet.) (mem. op.) explaining the appellant's interlocutory appeal is not authorized by section 51.014(a)(8) where plea to jurisdiction was not by a governmental unit). Thus, this Court declines Foster's invitation to consider any other order of the trial court for which a notice of appeal was not timely and properly filed.